No. 44,601

Von F. Price, Administrator of the Estate of Lillian Price, also known as Lillian W. Price, also known as Lillian M. Price, Deceased, *Appellant,* v. Harold B. Holmes, *Appellee.*

(422 P. 2d 976)

Opinion filed January 21, 1967.

*Robert A. Schermerhorn,* of Junction City, argued the cause, and *William D. Clement,* of Junction City, was with him on the brief for the appellant.

*Richard D. Rogers* and *Donn J. Everett,* both of Manhattan, argued the cause, and *Charles S. Arthur,* of Manhattan, was with them on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This is an action to recover damages sustained by the plaintiff's decedent, Lillian Price, which allegedly resulted from the faulty execution of a will. The trial court sustained the defendant's motion for summary judgment and the plaintiff has appealed. We shall refer to the parties as plaintiff, on the one hand and as defendant, or Holmes, on the other.

The facts which give rise to this rather bizarre lawsuit are these: On November 16, 1960, Henry H. Weber, who was a very sick man, drove to The Riley State Bank and asked the banker, Harold B. Holmes, who is the defendant in this action, to prepare a will leaving one-half of his estate to his wife and the other one-half to his niece, Lillian Price. In response to Weber's instructions, the banker drafted a will which Weber signed and two witnesses attested. Five days later, on November 21, 1960, Mr. Weber died.

Weber's will was offered for probate on November 26, 1960, and was contested by his widow on the ground that it had not been legally executed, *i. e.,* that it had not been executed in the presence of the attesting witnesses, nor attested by the witnesses in Weber's presence. Both the Probate Court and the District Court of Riley County found that Weber's will had been duly executed and attested and should be admitted to probate. The district court's judgment to such effect was then appealed to this court.

On November 25, 1963, while the appeal was still pending, Lillian Price died. Twelve days later, on December 7, 1963, this court reversed the Riley County District Court and held the Weber will to be void. Our opinion in that case is reported in *In re Estate of Weber,* 192 Kan. 258, 387 P. 2d 165.

Von T. Price was appointed administrator of Lillian Price's estate on February 3, 1964, and filed his petition in this case on June 4, 1965. Omitting formal parts, the petition alleges in substance that the defendant, Holmes, a banker and owner of a funeral home, represented to the public and to Weber that he was qualified and possessed sufficient knowledge, training and ability to draft and supervise the execution of Weber's will so that Weber's property would pass according to his desire when, in fact, he (Holmes) was not qualified and did not have the requisite knowledge, training and

experience to draw, direct or supervise the execution of the will; that Holmes, using Weber's instructions, but without warning Weber of his limited ability, did prepare a will dated November 16, 1960, and supervised its execution; that Weber died on November 21, 1960, and his will was filed and admitted to probate in the Probate Court of Riley County, Kansas, November 26, 1960; that an appeal was taken to the District Court of Riley County, which also entered an order admitting the will to probate; but that the Kansas Supreme Court ordered that the judgment admitting the will to probate be set aside, which holding has not been reversed or modified.

The petition further alleged that Holmes failed to have the will properly executed according to the laws of Kansas, contrary to his oral agreement with Weber; that Holmes negligently supervised and directed the execution of the will and failed to exercise the degree of care required; and that, if the will had been executed according to the laws of this state, Lillian Price would have received property approximating $58,611 (being half the value of Weber's estate). Judgment is asked in such amount and an additional $20,000 is sought for punitive damages.

To the petition, Holmes filed a motion for summary judgment on three grounds: (1) That plaintiff's cause of action did not survive under G. S. 1949, 60-3201; (2) that the statute of limitations had run on plaintiff's cause of action under G. S. 1949, 60-306; and (3) that plaintiff was estopped to maintain this action by reason of his decedent having joined and consented to the former will contest action. After a hearing, the district court sustained the defendant's motion on all three grounds, and entered judgment accordingly. This appeal followed.

It will be helpful, at the start of our discussion, to recapitulate the dates of importance:

"11-16-60  Will Drafted and Executed.
"11-21-60  Weber Died.
"11-26-60  Will Offered for Probate by Ben Heer.
"11-25-63  Lillian Price Died.
"12-7-63   Judgment Admitting Will to Probate
           Reversed by Supreme Court.
"2-3-64    Administrator of Lillian Price Estate Appointed.
"6-4-65    Administrator Filed Petition.
"6-5-65    Holmes Summoned."

The sufficiency of the plaintiff's petition to allege a cause of action was not put in issue by the defendant's motion for summary

judgment nor is it raised in this appeal. Accordingly, we shall assume, for purposes of this opinion, that the petition is sufficient to allege a valid cause of action, and we will be called to determine what the cause, or causes, of action may be.

Three points are raised by plaintiff on this appeal: (1) That his cause of action is not barred by the statute of limitations; (2) that the cause of action survived the death of Lillian Price; and (3) that he is not estopped to maintain this action. We proceed to his first point.

The plaintiff maintains that whether his cause of action sounds in implied contract, or in tort, or in fraud, it accrued either when the will was drafted and faultily executed on November 16, 1960, or when Mr. Weber died on November 21, 1960, or when the will was offered for probate on November 26, 1960.

To us, it seems clear that the plaintiff has endeavored to allege his cause of action in the alternative, the first sounding in contract for breach of implied warranty and the second sounding in tort on the ground of negligence. Plaintiff's counsel has also asserted that his client has a further cause of action for fraud but we have been wholly unable to find this theory expressed in the petition. Fraud is not alleged, even by remote implication, and we shall expend no further time or effort in pondering this claim.

As against a motion for summary judgment, filed under K. S. A. 60-256, pleadings are entitled to be liberally construed in favor of the party against whom the motion is directed (Gard, Kansas Code of Civil Procedure, annotated, p. 259). See, also, *Carpenter v. Strimple*, 190 Kan. 33, 372 P. 2d 571, and *Grisamore, Administratrix v. Atchison, T. & S. F. Rly. Co.*, 195 Kan. 16, 23, 403 P. 2d 93, stating a similar rule when a demurrer (an archaic term) has been directed against a pleading. We therefore proceed on the assumption that the petition before us, given a liberal interpretation, contains two causes of action: one, *ex contractu;* the other, *ex delicto.*

We pause here to note that we have held it permissible for a pleader to allege a cause of action in the alternative provided the alternatives are not repugnant (*McCoy v. Wesley Hospital & Nurse Training School,* 188 Kan. 325, 337, 362 P. 2d 841), it being elementary, of course, that the pleader will be limited to but a single recovery. Our decisions have also upheld the right of a plaintiff to plead twin causes of action arising out of a single transaction, the one sounding in tort and the other being in contract for breach of

implied warranty. (*Nichols v. Nold*, 174 Kan. 613, 258 P. 2d 317, 38 A. L. R. 2d 887; *McCoy v. Wesley Hospital & Nurse Training School,* supra.)

If either the cause of action sounding in tort or the cause of action sounding in contract survived the death of Lillian Price and, in addition, was not barred by the statute of limitations, then the defendant's motion for summary judgment should have been overruled. In *Crabb v. Swindler, Administratrix,* 184 Kan. 501, 337 P. 2d 986, this court was called upon to construe a petition in an action seeking to recover damages resulting from faulty plumbing installation, where damage had not occurred until after the death of the plumbing contractor. The plaintiff contended that his cause of action was in contract for breach of implied warranty, while the defendant claimed that the plaintiff's petition sounded in tort. In our opinion, we said:

"While good practices require the plaintiff's initial pleading to proceed on a single and definite theory, under modern code systems, his pleading may be held sufficient if it states a cause of action on any theory. . . ." (p. 504.)

To determine whether a cause of action survived, either in tort or in contract, we must ascertain when each would have accrued. On this particular phase of the law, we believe the circumstances attending this case fall within the ambit of *Crabb v. Swindler, Administratrix,* supra, and that the rules enunciated there are apropos to the present situation. In *Crabb* we held that a tort action would not accrue under the facts alleged there until damage had resulted from the defective plumbing. On the other hand, we determined that a cause of action in contract for breach of an implied warranty to install the plumbing fixxtures in a good and workmanlike manner accrued when the faulty plumbing work was done.

In support of the proposition that a cause of action in tort accrues when the damage results, this court, in *Crabb,* followed *Kitchener v. Williams,* 171 Kan. 540, 236 P. 2d 64, where suit was filed to recover damages sustained when gas, escaping from pipes connecting a hot water heater, caused an explosion. The action was predicated on negligence, *i. e.,* the faulty installation of a shut-off valve. The explosion did not take place until about two years after the valve was installed. The court discussed at considerable length, and with frequent citations, the question of when the cause of action arose and concluded that no cause of action accrued until the tortious act had occasioned damage.

Carrying that analogy to the situation which confronts us, we are constrained to hold that any cause of action existing against Holmes for negligence accrued when this court declared Weber's will void on December 7, 1963. That was the date on which the ground fell from under Lillian Price; prior to that time the will had been held valid by two courts, and Lillian had suffered no damage at the hands of Mr. Holmes.

At first blush, it might appear that what we are saying here, and what we said in the *Kitchener* and *Crabb* cases, is inconsistent with what we held in *Graham v. Updegraph*, 144 Kan. 45, 58 P. 2d 475, and *McCoy v. Wesley Hospital & Nurse Training School*, supra. However, a critical analysis will disclose a distinction between the two groups of cases. We pointed out in *Kitchener* that actual resulting damage is an essential component of an actionable tort, and that some damage follows as a matter of course from leaving part of a drill in a patient's jaw (see *Becker v. Porter*, 119 Kan. 626, 240 Pac. 584), or leaving radium beads in a woman's uterus (see *Graham v. Updegraph*, supra). Likewise, a fall from a hospital bed, which was the gravamen of the tort alleged in *McCoy*, necessarily would occasion some immediate actual damage even though the full extent thereof might not be known at once.

Immediate damage was not involved in either *Crabb* or *Kitchener*, nor is it here. The actual damage did not occur in *Crabb*, or in *Kitchener*, or in this case, until years had passed; nor was it even certain when the alleged wrongful act was committed that damage would ever result. In *Kitchener*, for example, an unfortunate combination of circumstances, which might never have occurred, triggered the failure of a valve leading to the explosion. In the instant case, had no contest of Weber's will developed, Lillian Price would have sustained no such damage as plaintiff now claims. We believe the two lines of cases are distinguishable, and that under the circumstances present in this case, the tort action did not accrue until Weber's will was finally declared invalid.

If no cause of action in tort accrued in favor of Lillian Price until she sustained damage, then no cause of action in tort survived at her death for the simple reason that she had died before that time. This was our holding in *Crabb* where we said that since the defendant, who was responsible for the faulty plumbing installation, had died before the damage occurred, no cause of action in tort survived against him. This is the law generally. (See 1 C. J. S.,

Abatement and Revival, § 136, p. 184.) The rule is plainly stated in *Neal v. Neal*, 250 F. 2d 885, 890:

". . . A cause of action does not survive in favor of a personal representative of a decedent unless it accrued in favor of the decedent in his lifetime."

But, as we have already indicated, a cause of action for breach of contract accrues when a contract is breached. In *Crabb v. Swindler, Administratrix*, supra, we said:

". . . Where there is a contractual relationship between the parties, the plaintiff's cause of action accrues when the contract or agreement is breached. (*Regier v. Amerada Petroleum Corp.*, 139 Kan. 177, 181, 182, 30 P. 2d 136; *Dougherty v. Norlin*, supra [147 Kan. 565, 78 P. 2d 65]; *Rex v. Warner*, 183 Kan. 763, 769, 770, 332 P. 2d 572.) See, also, *Rucker v. Hagar, et al*, 117 Kan. 76, 230 Pac. 70.

"In 1 Am. Jur., Actions, § 62, p. 453, the rule is stated as follows:

" 'A cause of action in contract accrues at the time of the breach or failure to do the thing agreed to, irrespective of any knowledge on the part of the plaintiff or of any actual injury it has occasioned him. . . .' " (p. 507.)

If Mr. Holmes did breach an implied warranty, the breach occurred, and the cause of action based thereon accrued, long before this court held Weber's will invalid and long before Lillian Price died. This is so whether the cause of action be considered as accruing on the date the will was executed, or on the date of Mr. Weber's death. Did this cause of action, then, survive? We believe it did.

By the terms of our statute (G. S. 1949, 60-3201, now K. S. A. 60-1801), a cause of action which survived at common law survives in this state. At common law, it was the rule that a cause of action founded on contract survived the death of either party where the breach resulted in a property loss or an injury to a property right (1 C. J. S., Abatement and Revival, § 137a, pp. 184-186). This principle was imbedded in the *Crabb* decision. In C. J. S., Abatement and Revival, § 137 b, p. 186, there is further elaboration of the rule:

"A cause of action survives where it is on contract, even though the contract was breached by a tort. . . . There may be a survival of an action or cause of action on an implied or quasi contract, even though it is founded on a tort."

See, also, *Cory v. Troth*, 170 Kan. 50, 223 P. 2d 1008, Syllabus 1 of which reads:

"Under G. S. 1947 Supp. 60-3201, any cause of action accruing to a promisee either for fraud in procuring the contract or for breach thereof survives the death of the promisee and an action therefor may be maintained only by his personal representative and not by his heirs."

We hold that the cause of action alleged for breach of warranty survived the death of Lillian Price.

This brings us to a sensitive point: Is the plaintiff's cause of action for breach of implied warranty barred by the statute of limitations? It is obvious that more than three years had elapsed (See K. S. A. 60-512) between the date Weber's will was executed and the time this action was commenced. However, the plaintiff argues that the statute was tolled by the pendency of the proceedings to contest Mr. Weber's will and he supports this contention by citing, among other authorities, the cases of *In re Estate of Brasfield,* 168 Kan. 376, 214 P. 2d 305, and *Newcom, Administrator v. Potterf,* 182 Kan. 73, 318 P. 2d 1069.

In *Brasfield,* the general rule which has often been followed by this court, and which we find reiterated in *Newcom,* is expressed in these words:

"The rule in this jurisdiction is that if a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the running of the statute of limitations applicable to the remedy is postponed, or if it has commenced to run, is suspended or tolled, during the time the restraint incident to the proceedings continues." (Syl. ¶ 7.)

While the defendant acknowledges the authority of the *Brasfield* and *Newcom* decisions, he maintains that neither decision is in point because of factual differences. He points out that each case revolves around a delay in the appointment of an administrator due to protracted litigation and the effect such a delay has on a creditor's right to file his claim, on the one hand, and an administrator's right, after appointment, to recover estate property, on the other hand.

We have found no case with facts identical to those now before us, but we believe the rationale of the rule defined in *Brasfield* covers the present case. In our judgment, Lillian Price was effectively prevented from suing Holmes for breach of warranty until Weber's will was found to be invalid. Stated conversely, it was only in the event the will turned out to be void that Lillian Price would find herself in a position to maintain this type of action at all. Before she could proceed against Holmes for damages, we believe it would be incumbent on Lillian, or some other interested party, to attempt, at least, the probate of Mr. Weber's will and only when such endeavor failed would Lillian have been able, under any theory, to recover from Holmes. We presume that Lillian Price did participate in efforts to secure probate of the will in which she was designated a devisee and

legatee. This attempt was turned into a will contest by the guardian of Weber's incompetent wife, a contest which eventually, after passing through three courts, ended in an adjudication that the will was invalid.

The situation is somewhat analogous to that which obtained in *McGregor v. McGregor*, 101 F. Supp. 848, where the legatees under a will filed an action for damages against the testator's widow for wilfully and wrongfully having presented and obtained the probate of an earlier will which left the entire estate to her. The plaintiffs did not allege an attempt on their part to probate the will under which they claimed as legatees. In dismissing the action, the federal court said:

"There is little, if any, dispute among the authorities that a person who has wrongfully deprived another of his just bequest under a will has perpetrated an actionable tort. (Citing cases.) However, the courts have ruled with almost equal unanimity that before the deprived legatee can seek relief in a tribunal other than the proper probate court, an attempt first must have been made to probate the will which is alleged to give rise to the claim, or that, in the alternative, it must be alleged and shown that such probate is impossible under the circumstances of the particular case. . . ." (pp. 849, 850.)

See, also *Riggs v. Rankins' Executor*, 268 Ky. 390, 105 S. W. 2d 167.

The case of *Lee C. Hess Company v. City of Susanville*, 176 Cal. App. 2d 594, 1 Cal. Rptr. 586, bears comparison. This was an action for breach of contract. The city had awarded a contract to the plaintiff as low bidder. Thereafter, the city council, after deciding that plaintiff was not a qualified bidder, awarded the contract to the next lowest bidder and instituted an action to validate the second contract. The Hess Company intervened in that lawsuit and its contract with the city was ultimately found to be valid. Hess then sued for damages for breach of contract and the city pleaded the statute of limitations. The court, in rejecting this defense, ruled that the running of the statute was suspended during the pendency of the validation proceedings.

A comparable set of circumstances came before the Arizona Supreme Court in *City of Phoenix v. Sittenfeld*, 53 Ariz. 240, 88 P. 2d 83. Sittenfeld, a city police officer, was dismissed under circumstances which he claimed violated civil service rules and regulations. The Civil Service Board refused to grant Sittenfeld a hearing, whereupon he filed suit to review the Board's action. Following a judgment of the circuit court, which voided his dismissal, the officer sued for back salary.

It was urged by the city that Sittenfeld's action was barred by the statute of limitations but it was held that the statute did not begin to run until the date the circuit court's judgment annulling the officer's dismissal. In the opinion, the rule is stated in this wise:

· "It is generally held that where the decision in a pending action is practically conclusive as to the nature and extent of a party's rights, and where his success thereunder is a prerequisite to his right to maintain a new action, the statute does not begin to run as to the new action until the determination of the pending suit, which decides whether the new right of action exists. . . ." (p. 249.)

Two additional Kansas cases deserve mention. In *City of Hutchinson v. Hutchinson*, 92 Kan. 518, 141 Pac. 589, the owner of a tract of land dedicated it to public use as a city park. Subsequently, the owner procured an order purporting to vacate the park and then proceeded to mortgage the land. Some years later, the city brought an action to annul the vacation, to cancel the mortgage and to quiet the city's title. During the pendency of that lawsuit title to the land was transferred to new owners. Eventually a judgment was entered quieting title against the city.

After title of the new owners had been quieted, the purchaser of the mortgage filed a cross-petition seeking to foreclose his mortgage. The present landowners defended on the ground that the claim was barred by the statute of limitations. This court refused that defense and held that where the character of legal proceedings is such that the law restrains a party from exercising his legal remedy against another, the running of the statute is suspended while the restraint continues. In arriving at its conclusion, the court quotes from *United States v. Wiley*, 78 U. S. (11 Wall.) 508, 513:

"'. . . it is the loss of the ability to sue rather than the loss of the right that stops the running of the statute. . . . Statutes of limitations are indeed statutes of repose. They are enacted upon the presumption that one having a well-founded claim will not delay enforcing it beyond a reasonable time, if he has the power to sue. Such reasonable time is therefore defined and allowed. But the basis of the presumption is gone whenever the ability to resort to the courts has been taken away. . . .'" (pp. 523, 524.)

In the second case, *Campbell v. Durant*, 110 Kan. 30, 202 Pac. 841, the plaintiffs were beneficiaries under a will leaving them one-half of the testator's personalty (in addition to certain real estate). After some seven years of contest by the testator's widow, the will was eventually held to be valid. The plaintiffs then brought suit to recover possession of their share of the personal property which

was then in the hands of the widow. The statute of limitations was pleaded in bar. In overruling this defense, the court said:

". . . The time which elapsed between the death of the testator in 1909 and the commencement of this action in 1916 is accounted for by long-drawn-out litigation provoked by defendant over the probating and contest of the will. The pendency of that litigation prevented the plaintiffs from enforcing their rights against the defendant (25 Cyc. 1278), and this action was begun in ample time upon the termination of the litigation over the will." (p. 35.)

True, Holmes was not, strictly speaking, a party either to the proceedings to probate Weber's will or to the will contest which followed (See *In re Estate of Weber,* supra). However, under the circumstances of this case, that fact is not material. Lillian Price was just as effectively precluded from proceeding against Mr. Holmes as if he had been an actual party to the will contest. We might mention at this point that Mr. Holmes was fully apprised of the contest proceedings, having testified in district court on behalf of the proponent of the will.

What we have already said disposes of the defendant's claim that the plaintiff is estopped from maintaining this action because Lillian Price participated in the proceedings to probate Weber's will. The institution of probate proceedings, either by Lillian Price or some other party interested in establishing the will, and an adjudication that the will was invalid, were both prerequisites to the institution of the present action. The record before us does not clearly disclose what part Lillian Price took in the former proceedings, but if we assume that she actively participated therein, no estoppel is to be inferred from that; she would be doing only what was required be done before this action could be maintained.

For reasons set out herein, the judgment must be reversed with directions to overrule the defendant's motion for summary judgment. It is so ordered.