NEW MARKET POULTRY FARMS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. JOHN C. FELLOWS, INDIVIDUALLY, FELLOWS AND READ, A PARTNERSHIP IN THE STATE OF NEW JERSEY, AND JOHN C. FELLOWS, JR., AND JOSEPH READ, INDIVIDUALLY AND AS PARTNERS IN FELLOWS AND READ, DEFENDANTS-RESPONDENTS.

Argued September 26, 1967—Decided May 6, 1968.

*Mr. Stephen F. Lichtenstein* argued the case for plaintiff-appellant (*Messrs. Lichtenstein and Levy,* attorneys; *Mr. Stanley C. VanNess* on the brief).

*Mr. Mark D. Larner* argued the cause for the defendants-respondents (*Messrs. Budd, Larner, Kent and Gross,* attorneys).

The opinion of the court was delivered by

HANEMAN, J. On July 20, 1965 plaintiff filed a complaint in the Law Division seeking damages from defendants, who are professional engineers and land surveyors, arising from an alleged error committed by them in 1952. After filing an answer, asserting that the action was barred by the Statute of Limitations, defendants moved for summary judgment on the ground that the action was so barred by said Statute. The court granted the motion. The plaintiff appealed to the Appellate Division. Before argument in the Appellate Division this Court certified the appeal. *R. R.* 1:10–1A.

▮ At this stage of the proceedings we are required to assume the truth of the allegations of the complaint except insofar as they are contradicted by concessions of the plaintiff contained in the interrogatories and admissions. *Wall v. Hudson County Park Com.,* 80 *N. J. Super.* 372 (*App.*

*Div.* 1963), certification denied 41 *N. J.* 198 (1963); *Amabile v. Lerner,* 74 *N. J. Super.* 443 (*App. Div.* 1962).

The facts as elicited from those sources are as follows:

On March 21, 1952, Ida Pack retained John C. Fellows to furnish her with a survey, land description and acreage calculation of two certain adjacent parcels of realty in Piscataway Township. Defendant shortly thereafter delivered the survey, description and acreage calculation to Mrs. Pack. The acreage calculation as thus delivered was 49.5 acres and 7.94 acres respectively. On September 15, 1952, Mrs. Pack conveyed the lands to New Market Poultry Farms, Inc. (New Market). She allegedly was compensated for the conveyance on the basis of the above acreage. In consideration of the conveyance and her payment of $9,100 in cash she received 30 shares of common stock and 70 shares of noncumulative preferred stock. At the time of this transfer there were 70 shares of common stock issued and outstanding; the record does not indicate the number of preferred shares issued. Mrs. Pack presently owns "1 share of common (qualifying)".

On June 6, 1963, New Market entered into an agreement to sell the above lands to Foxfield Homes, Inc. The lands were described as per the Fellows survey. Although no exact acreage was specified in said agreement, the following clause appears therein:

"ARTICLE X. The purchase price payable hereunder may be modified as follows: Buyer shall, at Buyer's own cost and expense, obtain a calculation from an engineer licensed under the laws of the State of New Jersey as to the quantity of land contained within the boundaries of the description hereto annexed as Schedule A, said calculation to be subject to verification by licensed engineer designated by seller with arbitration in event of dispute. In the event that the land agreed to be conveyed hereunder according to said calculation contains total acreage of fifty-six (56) acres or more, there shall be no adjustment in the total purchase price, as aforesaid; and in the event that the land according to said calculation contains total acreage of less than fifty-six (56) acres but fifty (50) acres or more, the total purchase price shall be reduced by an amount calculated at the rate of Two Thousand Five Hundred

($2,500.00) Dollars for each acre by which the total acreage is less than fifty-six (56) acres; and in the event that the land according to said calculation contains total acreage of less than fifty (50) acres, the Buyer, at his election, may accept such total acreage as the land contains, with a reduction of the purchase price by an amount calculated at the rate of Two Thousand Five Hundred ($2,500.00) Dollars for each acre by which the total acreage is less than fifty-six (56) acres, or may receive from the Seller a refund of the Buyer's down payment made hereunder, whereupon this agreement shall wholly cease and terminate and neither party shall have any further claim against the other by reason of this agreement. In the event that the purchase price is reduced by reason of the calculation aforesaid, the reduction shall be effected by diminishing the amount of the purchase money mortgage referred to above and by diminishing the payment due on July 2, 1970 to the extent of such diminution of the purchase price."

On August 7, 1963 in connection with said pending sale, a new survey and acreage calculation was obtained from Fellows and Read, a partnership of which John Fellows was a partner. This calculation disclosed the acreage of the two tracts as being 54.43 acres and 7.6 acres respectively. Defendants admit that the later calculation, which is 4.59 acres in excess of the earlier calculation, is correct.

On October 25, 1963 Mrs. Pack assigned to New Market all of her right, title and interest in and to all rights, claims, etc., which she had against Fellows individually or Fellows and Read, a partnership. New Market filed its complaint on July 20, 1965 as above noted seeking damages from defendants.

We are here confronted with the increasingly frequent inquiry as to the date from which the Statute of Limitations commences to run, *i. e.*, when the cause of action accrues. See *e. g., Rosenau v. City of New Brunswick,* 51 *N. J.* 130 (1968) affirming 93 *N. J. Super.* 49 (*App. Div.* 1966); *Fernandi v. Strully,* 35 *N. J.* 434 (1961); *Rothman v. Silber,* 90 *N. J. Super.* 22 (*App. Div.* 1966) certification denied 46 *N. J.* 538.

If the date the survey was undertaken or the calculation delivered is to be considered the date of critical importance, the statute has long since tolled under *N. J. S.* 2A:14–1.

Plaintiff's argument in the matter *sub judice* is that although the breach of duty occurred in 1952, the resulting actual damage was not discovered, and indeed may not have occurred, until 1963 and that the statute should begin to run from the latter date. Plaintiff recognizes that under almost identical circumstances the courts of this State have held that the statute "begins to run from the time of the occurrence of the breach of' duty". *Gogolin v. Williams*, 91 *N. J. L.* 266 (*E. & A.* 1917). See also *Sullivan v. Stout*, 120 *N. J. L.* 304 (*E. & A.* 1938) (which concerns a suit against an attorney for negligently preparing a title report). Plaintiff frankly admits that the trial judge did not commit legal error if the above two cases are to be regarded as continuing and binding precedent. However, plaintiff argues that the modern development of the law has established a trend away from such a harsh and inequitable result and suggests a change of approach to the problem relying principally upon *Fernandi v. Strully*, 35 *N. J.* 434 (1961). In relation to *Gogolin, supra*, 91 *N. J. L.* 266 and *Sullivan, supra*, 120 *N. J. L.* 304, this Court said in *Fernandi, supra*, at *p.* 450:

"* * * For present purposes we need not question these instances for we are satisfied that *the case at hand falls within a special grouping or 'class of cases'* (1 *Wood, supra*, at *pp.* 685, 686) *where the period of limitations may and should fairly and justly be said to begin to run when the plaintiff knows or has any reason to know about the foreign object and the existence of the cause of action based upon its presence; * * *."* (Emphasis supplied)

We are now confronted directly with the question which we did not pass on in *Fernandi, supra*. A detailed restatement of the policy considerations and reasons which undergird statute of limitations is not required in view of the able and detailed analyses lately expressed in *Fernandi, supra*, and more recently in *Rosenau v. City of New Brunswick, et al.*, 51 *N. J.* 130 (1968).

In *Fernandi, supra*, a medical malpractice case involving the leaving of a foreign object in a patient's body, this Court

recognized the inequity and unfairness of blindly applying the doctrine that the Statute of Limitations should always commence to run from the date when plaintiff first suffered legal damage from defendant's negligence, *i. e.*, when a breach of duty occurred with or without attendant actual damage, rather than on the date when he knew or had reason to know that he had a cause of action arising from the suffering of actual damage. The court there said, 35 *N. J.*, at *p.* 450:

> "It must be borne in mind that Mrs. Fernandi's claim does not raise questions as to her credibility nor does it rest on matters of professional diagnosis, judgment or discretion. It rests on the presence of a foreign object within her abdomen following an operation performed upon her by the defendant-doctors. Here the lapse of time does not entail the danger of a false or frivolous claim, nor the danger of a speculative or uncertain claim. The circumstances do not permit the suggestion that Mrs. Fernandi may have knowingly slept on her rights but, on the contrary, establish that the cause of action was unknown and unknowable to her until shortly before she instituted suit. Justice cries out that she fairly be afforded a day in court and it appears evident to us that this may be done, at least in this highly confined type of case, without any undue impairment of the two-year limitation or the considerations of repose which underlie it. If, as is to be hoped, the resulting jeopardy to defendants produces a greater measure of care in connection with surgical operations, so much the better. * * *"

Thus, *Fernandi* decided that in the particular type of case there involved, the general rule that the statute runs from the date of the infliction of the wrong or injury should be abrogated in favor of the rule that the statute runs from the date when plaintiff knew or had reason to know that he had a cause of action.

*Rosenau, supra,* involved damage resulting from the breaking of a water meter manufactured by the private corporate defendant and installed in plaintiff's home by the municipal corporate defendant in 1950. Plaintiff sued in two counts alleging (1) the City was negligent in the servicing and maintenance of the meter, and (2) the private corporate defendant had been negligent in the manufacture of the

meter and that apart from its negligence the meter was defective when manufactured. The trial court granted the manufacturer's motion for summary judgment bottomed on the ground that the action was barred by the Statute of Limitations because the suit was not brought until 1965, fifteen years after the meter had been installed but only one year after it had broken. This Court reversed holding that plaintiffs "were entitled to institute their negligence action expeditiously, as they did, after they first suffered damage". Justice Jacobs' opinion indicates that some kind of actual damage must occur before the statute begins to run; mere "legal" damage or breach of a duty is not enough. Justice Jacobs, however, was not required to consider whether the crucial date for ascertaining the commencement of the running of the Statute of Limitations in an action bottomed on negligence, was the date the actual injury or damage was caused, or the date upon which it was discovered since both the happening of the actual damage and the discovery of it occurred at the same moment. In the present case, however, the actual damage to Mrs. Pack occurred in 1952 when the land was conveyed to New Market but knowledge or discovery that she had sustained injury or damage was not present until 1963 when a new survey was obtained.

Here as in *Fernandi, supra,* 35 *N. J.* 450 (1961) the credibility of plaintiff's claim is not questioned and the incontestable factual pattern presented to us on this motion bespeaks the probability of defendant's negligent fault in the acreage calculation. The passage of time does not entail the danger of a fraudulent, false, frivolous, speculative or uncertain claim. Nor is such danger even suggested by defendants. Further, under the said facts it does not appear possible that by reason of the passage of time defendant's testimonial proof of a defense would be made more difficult. The circumstances so portrayed do not permit a suggestion that Mrs. Pack knowingly slept on her rights but to the contrary establish that she brought suit expeditiously after she discovered her alleged actual damage. Accordingly we

hold that under the facts and circumstances as presented, the motion for summary judgment should have been denied. Such a result, as noted, is consistent with *Fernandi* and in harmony with the trend in other jurisdictions. See *Fort Myers Seafood Packers, Inc. v. Steptoe and Johnson,* 381 *F. 2d* 261 (*D. C. Cir.* 1967) ; *Yoshizaki v. Hilo Hospital,* 433 *P. 2d* 220 (*Sup. Ct. Hawaii* 1967) ; *Chrischilles v. Griswold,* 150 *N. W. 2d* 94 (*Sup. Ct. Iowa* 1967) ; *Price v. Holmes,* 198 *Kan.* 100, 422 *P. 2d* 976 (*Sup. Ct.* 1967) ; *Marchand v. Miazza,* 151 *So. 2d* 372 (*Ct. App. La.* 1963) ; *White v. Schnoebelen,* 91 *N. H.* 273, 18 *A. 2d* 185 (*Sup. Ct.* 1941) ; *Bland v. Smith,* 197 *Tenn.* 683, 277 *S. W. 2d* 377 (*Sup. Ct.* 1955) ; *Lillach, Malpractice Statute of Limitations in New York and other jurisdictions,* 47 *Cornell L. Q.* 399, *esp.* 357–360 (1962).

It is to be remembered that the appeal here concerns a summary judgment bottomed upon the Statute of Limitations and not a judgment resulting from a plenary trial. Accordingly we feel obliged to note that the foregoing is not to say that the defendant may not, on the plenary trial, contest any of our above factual conclusions which on this motion we were obliged to assume to be true.

The interrogatories are not clear as to whether the damage which plaintiff seeks under the assigned claim of Mrs. Pack, is the loss it allegedly sustained on its conveyance to Foxfield Homes. The question of whether this is the proper measure of damages was not raised and argued before this Court. We therefore do not express any opinion on that issue.

Reversed and remanded.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, GOLDMANN and HANEMAN—6.

*For affirmance*—None.