NOT DESIGNATED FOR PUBLICATION

No. 122,926

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

EDWARD R. DUPASS,
*Appellant*,

v.

KANSAS INSURANCE, INC., et al.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Douglas District Court; AMY J. HANLEY, judge. Opinion filed July 23, 2021. Affirmed.

*Richard A. Gullette*, pro hac vice, of Phoenix, Arizona, and *Frederick J. Patton, II*, of Patton and Patton, Chartered, of Topeka, for appellant.

*Patric S. Linden*, *Kevin D. Case*, and *Jacqueline M. Duvall*, pro hac vice, of Case Linden, P.C., of Kansas City, Missouri, for appellees Kansas Insurance, Inc., Thomas County Insurance Agency, Inc., and Tim Moeder.

*Todd N. Thompson*, of Thompson-Hall P.A., of Lawrence, for appellee Jim McGinnis.

Before ARNOLD-BURGER, C.J., GARDNER and ISHERWOOD, JJ.

PER CURIAM: Donald Woofter collided with Edward Dupass, and Dupass sued Woofter as a result. Woofter thought his vehicle was covered by a $1,000,000 liability policy, but later discovered it was only covered by a $100,000 liability policy. The district court entered a judgment of over $500,000 against Woofter. Dupass and Woofter agreed to settle for $120,000, accompanied by an assignment to Dupass of Woofter's

1

claims against his insurance agents. Dupass then sued Kansas Insurance, Inc. (Kansas Insurance), Thomas County Insurance Agency, Inc. (Thomas County), Jim McGinnis, and Tim Moeder (collectively Defendants), alleging a failure to procure insurance. The district court found that Woofter's tort claims were not assignable, which left Dupass limited to the pursuit of a breach of contract claim as a potential avenue of recovery. The district court dismissed the case upon finding that the breach of contract claim accrued at the time of the breach and that the three-year statute of limitations barred Dupass from proceeding. We affirm the district court's conclusion.

FACTUAL AND PROCEDURE BACKGROUND

On January 3, 2013, Woofter was operating his 2011 Buick in Phoenix, Arizona, when he collided with Dupass. Dupass sustained serious injuries which, in turn, prompted substantial medical expenses. Dupass filed an action against Woofter in Arizona after the collision. Woofter believed that the Defendants, who had fulfilled his insurance needs for approximately 40 years, had procured insurance for his 2011 Buick under a $1,000,000 umbrella liability policy between Allied Insurance and Farmers Alliance designed to cover his personal automobiles, as well as his farm policies. During the course of discovery, however, Woofter became aware that the 2011 Buick he was driving at the time of the accident was only covered by an Allied Insurance motor vehicle liability policy with a limit of $100,000. In December 2016, the Arizona court entered a judgment against Woofter in the amount of $504,518.20.

Dupass and Woofter later entered into a written settlement agreement under which Dupass agreed to settle for $120,000 and, in consideration thereof, Woofter assigned Dupass "all rights, claims, and causes of actions against the agents, or other persons or entities relating to or arising out of the procurement of the subject policy, including but not limited to all statutory rights, contractual rights, and rights arising in tort or otherwise relating to the procurement of [the policy]."

2

On December 7, 2018, Dupass filed a petition in Douglas County alleging that "Woofter agreed to purchase, and Defendants agreed to procure, insurance policies providing adequate coverage on his vehicles, machinery, and property." He further asserted that Woofter had engaged in an annual review of his policies with the Defendants for over 40 years. It was Dupass' position that "Defendants breached their agreement with Woofter by failing to procure the desired coverage and by failing to advise him of the adequacy of the coverage provided by the various policies purchased by him." Dupass also alleged that the "Defendants were negligent in failing to provide the coverage requested by [Woofter]" and "[a]s a direct and proximate result of Defendants' aforesaid breach, Woofter has been damaged in the amount of $404,518.20."

On January 23, 2019, McGinnis moved for judgment on the pleadings. In support of his request, he advised the court that he left the Thomas County agency in 1997, long before the collision between Woofter and Dupass occurred. He also asserted that Woofter's tort claims were not assignable and that McGinnis owed no duty of care to Dupass for the purchase of insurance by Woofter. Dupass responded and denied that the case involved an assignment of any tort claims. Rather, the only matter at issue was a contractual claim that applied a tort standard of care.

The district court requested additional briefing from the parties addressing the contractual duties owed to Dupass by the Defendants, as well as the applicable statute of limitations governing such claims. Dupass honored the court's request and argued that there was an unwritten contract between McGinnis and Woofter under which McGinnis, acting as Woofter's agent, agreed to procure vehicle insurance for Woofter. According to Dupass, McGinnis failed to follow Woofter's directive to place the 2011 Buick under the same policy that covered Woofter's other property. Dupass asserted that the statute of limitations on this breach did not, and could not, begin to run until December 2016, when the Arizona judgment was entered against Woofter for $504,518.20. In support of this contention, Dupass argued that "[w]hile the duty arises from contract, the tort standard of

3

care applies to this case and once damages are established the cause of action accrues starting the statute of limitations."

McGinnis likewise filed a brief in response to the court's request and noted that Dupass' petition defined the alleged oral contract as one to procure liability insurance with an "adequate" coverage limit. According to McGinnis, the term "adequate" is vague, but still under any interpretation of that term, the $100,000 liability policy the Defendants provided to Woofter was adequate. McGinnis also asserted that the statute of limitations period surrounding the claim that Defendants failed to procure adequate liability coverage began to run when Woofter had his annual insurance policy review with the Defendants which, at the latest, would have been by January 2014. Thus, according to McGinnis, the petition filed by Dupass in December 2018 fell outside the three-year statute of limitations for oral contract claims. McGinnis directed the district court to K.S.A. 60-512 as authority for his contention.

In October 2019, the district court issued a memorandum decision granting McGinnis' motion for judgment on the pleadings. The court first held that "[i]nsurance contract duties are duties arising under or imposed by agreement, and if breached, the action lies in contract." Thus, the action against McGinnis could be brought as a contract claim and was properly assigned. Whether the agreement to provide "adequate" coverage was breached involved questions of fact, however, and was not appropriately decided in a motion on the pleadings. The district court agreed with McGinnis that the statute of limitations began to run when Woofter had an annual policy review, which was more than three years before Dupass filed his petition against the Defendants. That is, the contract claim arose immediately when the breach occurred. The court also found that Dupass' case against Woofter, assessing the amount of damages arising out of the accident, did not toll the statute of limitations because that case was not a prerequisite to pursuing a claim against McGinnis. Thus, the court granted McGinnis' motion for judgment on the pleadings.

4

Soon after, Kansas Insurance, Thomas County, and Moeder (Kansas Insurance Defendants) filed a joint motion for judgment on the pleadings and advanced arguments mirroring those presented by McGinnis. Specifically, they argued that the statute of limitations had expired on Dupass' breach of contract claim before he filed his petition and "that the alleged breach occurred at the time of Defendants' alleged failure to procure the desired coverage, which would have occurred in advance of the policy being in effect on January 3, 2013."

Dupass responded to the Kansas Insurance Defendants' joint motion and also submitted a motion seeking reconsideration of the ruling on McGinnis' motion. Dupass reiterated his earlier argument that the cause of action did not accrue until the damages were determined by the entry of judgment for damages in Arizona.

The district court granted the Kansas Insurance Defendants' motion upon finding that they were similarly situated with McGinnis. The court adopted the same findings of fact and conclusions of law set forth in its decision granting McGinnis' motion for judgment on the pleadings.

Dupass appealed from the district court's order granting the Kansas Insurance Defendants' motion for judgment on the pleadings and denying Dupass' motion for reconsideration regarding McGinnis' motion.

ANALYSIS

Dupass argues that the statute of limitations for his breach of contract claim did not begin to accrue until the litigation between him and Woofter, for the precise amount of damages sustained, was settled. Alternatively, Dupass argues that the statute of limitations was tolled during the pendency of that underlying litigation. Under either argument, his petition would have been filed within the statute of limitations. Both points

5

arise out of the same foundational premise: The breach of contract action could not be prosecuted until damages were determined in the underlying litigation. The flaw in Dupass' arguments, however, is that when a breach of contract is alleged, a claim can proceed immediately following that breach whether actual damage has resulted, and the claimant would have a right to recover nominal damages if nothing more. We will address each argument in turn.

DID THE DISTRICT COURT ERR IN DETERMINING THAT DUPASS' CONTRACT CLAIM ACCRUED ON THE DATE OF THE ALLEGED BREACH?

In the first of his two claims of error, Dupass challenges the district court's decision to grant the Defendants' motions for a judgment on the pleadings under K.S.A. 60-212(c), because the date of the breach is the point at which the statute of limitations began to run. It is his contention that this conclusion is erroneous, and that the time could not commence until entry of a judgment for damages in the Arizona case, because his cause of action could not begin to accrue until that precise figure was established.

*Standard Legal Principles*

This court exercises unlimited review in determining whether a district court properly granted a motion for judgment on the pleadings. *Mashaney v. Board of Indigents' Defense Services*, 302 Kan. 625, 639, 355 P.3d 667 (2015).

> "'A motion for judgment on the pleadings under 60-212(c), filed by a defendant, is based upon the premise that the moving party is entitled to judgment on the face of the pleadings themselves and the basic question to be determined is whether, upon the admitted facts, the plaintiffs have stated a cause of action. The motion serves as a means of disposing of the case without a trial where the total result of the pleadings frame the issues in such manner that the disposition of the case is a matter of law on the facts alleged or admitted, leaving no real issue to be tried. The motion operates as an

admission by movant of all fact allegations in the opposing party's pleadings.' [Citations omitted.]" 302 Kan. at 638.

Dupass contends that his breach of contract action for failure to procure insurance which, he notes, involved application of a tort standard of care, accrued only when the full extent of Woofter's specific liability was decided, rather than when the contract was breached.

In resolving Dupass' claim, we turn first to this court's opinion in *Marshel Investments, Inc. v. Cohen*, 6 Kan. App. 2d 672, 634 P.2d 133 (1981), another case that involved an action by an insured against an insurance agent and his firm. The insured requested complete insurance coverage on a leased oil well, and the agent acquired a comprehensive general liability coverage policy. A subsequent fire caused a loss not covered by the policy, so the insured sued the agent for failure to procure a policy that would have covered the loss. The insured claimed that the agent was liable to him because he failed to procure certain coverages which would have provided for payment by the insurer for the value of the equipment destroyed and the firefighting costs. In discussing the insured's cause of action, this court found that "an insurance agent or broker who undertakes to procure insurance for another owes to the client the duty to exercise the skill, care and diligence that would be exercised by a reasonably prudent and competent insurance agent or broker acting under the same circumstances." 6 Kan. App. 2d at 683. The court referred to this as the "exercise care duty" and explained:

> "It has been explicitly stated an action for the breach of this duty may be brought in contract or in tort. Although no Kansas cases reveal particular exposition of legal analysis for the ability to bring the action on these alternative theories, it might be said the duty is both an implied contractual term of the undertaking (contract duty) and a part of the fiduciary duty owed the client by reason of the principal-agent relationship arising out of the undertaking (tort duty). Despite all too familiar usage of the term 'negligent breach of contract,' if there is a breach of contract, there is a breach of contract, whether because of intentional conduct, inability to perform, accident, negligence, or whatever. It

7

is inappropriate to denominate the available contract cause of action as one for negligent breach of contract." 6 Kan. App. 2d at 683.

Dupass' cause of action here is much like that in *Marshel*, although Dupass' claims arose from an assignment. As the district court properly noted here, "tort claims are generally not assignable." See *Stechschulte v. Jennings*, 297 Kan. 2, 30, 298 P.3d 1083 (2013). Thus, only Dupass' breach of contract claim remained. Again, this claim presumes that Woofter requested and received motor vehicle coverage from the Defendants, but the resulting coverage fell far short of what he bargained for. An assignee stands in the shoes of the assignor. Therefore, the obligations and defenses which burden the assignor will equally burden the assignee. This includes the statute of limitations, which the district court properly found barred Dupass' claims against the Defendants.

K.S.A. 60-512 provides a three-year statute of limitation for causes of action based on unwritten contracts. "As a general rule, a cause of action accrues when the plaintiff could have first filed and prosecuted his [or her] action to a successful conclusion." *Edward Kraemer & Sons, Inc. v. City of Overland Park*, 19 Kan. App. 2d 1087, Syl. ¶ 1, 880 P.2d 789 (1994). "In most contract cases, that means the cause of action accrues when the contract is breached." 19 Kan. App. 2d at 1091; see also *Pizel v. Zuspann*, 247 Kan. 54, 74, 795 P.2d 42 (1990) ("A cause of action for breach of contract accrues when a contract is breached by the failure to do the thing agreed to, irrespective of any knowledge on the part of the plaintiff or of any actual injury it causes."). Accordingly, the district court's conclusion here that Dupass' cause of action accrued when the contract was breached adheres to these long-standing principles.

Dupass advances two separate arguments on appeal and mainly relies on the same three cases as justification for relief with respect to both claims. Those cases include *Price v. Holmes*, 198 Kan. 100, 422 P.2d 976 (1967), *Keith v. Schiefen-Stockham*

*Insurance Agency, Inc.*, 209 Kan. 537, 498 P.2d 265 (1972), and *Nungesser v. Bryant*, 283 Kan. 550, 153 P.3d 1277 (2007). Under his first claim of error, Dupass asks that we analyze these cases under the proposition that the statute of limitations for a breach of contract simply does not accrue until damages are determined. As for his second claim, he asks that we consider those authorities as persuasive support for the notion that the statute of limitations for his breach of contract claim was tolled until the related litigation assessing damages concluded.

After careful review, we conclude that the cases cited by Dupass are readily distinguishable from the matter before us and do not provide a solid foundation to sustain his claims of error. To the contrary, our analysis of the cases cited, and the governing legal principles articulated therein, reflect that the district court properly granted the Defendants' motions for judgment on the pleadings. That ruling is affirmed. We will address each of Dupass' issues, as well as the authorities relied on, in turn. It is important to address those cases in order to thoroughly explain why they do not impact the outcome of his case.

First, Dupass cites *Price*, 198 Kan. 100. In that case, Henry Weber requested that Harold Holmes prepare a will leaving one half of his estate to his wife and the other half to his niece, Lillian Price. Weber passed away a few short days later, and the will prepared by Holmes was offered for probate. But Weber's widow contested the will, alleging that it had not been legally executed. Her claim was rejected, and she pursued an appeal to this court. While that appeal was pending, Lillian Price passed away.

Von Price was appointed as the administrator of Lillian's estate and promptly brought an action to recover damages which purportedly arose out of a host of transgressions Holmes' committed in preparing Weber's will. Specifically, Price's petition alleged that Holmes failed to properly execute the will, that he negligently supervised and directed the execution of the will, and that he failed to exercise the necessary degree of

9

care. The petition pled "twin causes of action," one sounding in contract for breach of implied warranty and the other in tort for negligence. 198 Kan. at 103-04. The Supreme Court reiterated that the cause of action for breach of warranty arose at the time of the breach, i.e., the drafting of Weber's will. However, before Price could pursue an action against Holmes for breach of warranty, it first had to be determined whether Weber's will was truly invalid. It was only if the will turned out to be invalid that Price would have a foundation on which to frame a cause of action. 198 Kan. at 105. The same cannot be said for Dupass' case. A similar, preliminary finding was not required here.

The second case to which Dupass directs our attention is *Keith*, 209 Kan. 537. As will become apparent though, that case bears the same infirmity as *Price* as it relates to Dupass' argument. The plaintiffs in *Keith* were the surviving spouses and minor children of two people killed while employed by Leslie Johnson. The widow and surviving children of one of the deceased individuals instituted a workers compensation proceeding against Johnson and his alleged insurance carrier. The case was decided adversely to the claimants, in part, because Johnson had not secured workers compensation coverage or filed an election to come under the Workers Compensation Act. See *Otta v. Johnson*, 204 Kan. 366, 461 P.2d 758 (1969). The plaintiffs then sued the alleged insurance agency claiming that the agency had failed to procure workers compensation insurance at Johnson's direction and also failed to cause an election for Johnson to be filed with the workers compensation commission. This failure, the plaintiffs asserted, caused the plaintiffs to suffer damages equal to the sums they would have been entitled to had the insurance been procured and the election filed. The district court dismissed the petition but did not specify the reasons for its ruling.

On review, the Kansas Supreme Court noted that "the theory of plaintiffs' petition appears to be that because of defendants' alleged breach of contract in failing to procure the insurance and to cause an election to be filed as promised, the plaintiffs are entitled to recover at common law either in contract or tort." 209 Kan. at 539. The court again stated

10

that, much like *Price*, the plaintiffs' cause of action likewise arose when the breach occurred, specifically, at that point when the insurance was not secured as promised. 209 Kan. at 543-44. *Keith* is likewise notable for the added common thread it shares with *Price.* That is, just as *Price* required a preliminary determination to ascertain whether the will was valid, the plaintiffs in *Keith* were under a similar obligation to secure an initial determination of whether the insurance at issue truly "had not been procured, nor an election caused to be filed" before their path was cleared to proceed with an action to address the breach. 209 Kan. at 544.

Despite Dupass' persistent efforts, in his written brief, as well as his argument before us, to synthesize these cases with the matter at hand, we are not persuaded. To the contrary, we find that *Price* and *Keith* stand in stark contrast to the case we are now tasked with considering as both necessitated a preliminary level of inquiry that is not required here. To the contrary, it is without question that the automobile Woofter was operating at the time of the accident was excluded from the more substantial umbrella policy. The sole question here is simply whether the degree to which the vehicle was insured constituted a breach by the Defendants.

Dupass contends that those preliminary determinations are properly interpreted as a signal that the point of accrual for the statute of limitations governing breach of contract claims is the point at which those initial matters are resolved. The plain language of the rulings articulated by the *Price* and *Keith* courts lead us to the opposite conclusion. Neither case undermines the principle that a cause of action for breach of contract accrues on the date of the breach. To the contrary, both courts held steadfast to that rule. *Price*, 198 Kan. at 106; *Keith*, 209 Kan. at 543-44.

The final case that Dupass relies on heavily in support of his first claim of error is *Nungesser*, 283 Kan. 550. In that case, Josh Bryant ran a stop sign and collided with Jimmy Nungesser, resulting in serious injuries to Nungesser. The parties' attempt to settle

11

ultimately proved fruitless, so Nungesser sued Bryant for damages, seeking an amount which far exceeded the liability limits in Bryant's automobile insurance policy. Bryant filed a third-party petition against his insurance provider, EMCASCO Insurance Company, seeking full indemnity from EMCASCO because EMCASCO negligently, or in bad faith, failed to settle Nungesser's claim within the policy limit, thereby prompting him to sue Bryant. EMCASCO moved for dismissal, arguing that it was not a proper party to Nungesser's tort action against Bryant unless judgment was entered against Bryant, but the district court denied the motion. On review, the Kansas Supreme Court held that the district court erred in denying EMCASCO's motion to dismiss:

> "Simply put, an insured's action against his or her insurer for negligent or bad faith failure to settle a case must wait for the liability of the insured to be decided. A defendant in an auto liability case may not sue his or her insurer on such claims until the tort claim against him or her has been reduced to judgment." 283 Kan. at 558.

The *Nungesser* court explained that a cause of action for bad faith failure to settle does not accrue until conclusion of the underlying litigation because, if a judgment is not entered against the insured, then the insurer has not acted in bad faith in refusing to settle. 283 Kan. at 562-64. While the *Nungesser* opinion aligns with Kansas' law on the accrual of claims arising out of a negligent or bad faith failure to settle, it does not advance Dupass' position because his case does not involve such a claim.

In contrast, a claim for breach of contract, the only claim at issue, begins to accrue when the contract is breached, "irrespective of any knowledge on the part of the plaintiff or of any actual injury it causes." *Pizel*, 247 Kan. at 74. A fair reading of K.S.A. 60-512, which sets the statute of limitations for unwritten contract claims, reflects that it lacks any language like that found in K.S.A. 60-513(b), which delays accrual of a tort claim until substantial injury occurs and the injury is reasonably ascertainable. See *Jones v. Hyatt Insurance Agency*, 356 Md. 639, 741 A.2d 1099 (1999) (holding that statute of limitations on automobile accident victims' third-party beneficiary breach of contract

12

claim against insurance agent for failure to procure insurance began to run when agent breached contract, not when the victims obtained a judgment against the insured).

The district court properly concluded that Woofter's breach of contract claim, assigned to Dupass, accrued at the time of breach and because the breach occurred more than three years before Dupass filed his petition, his claims were barred by the statute of limitations. The district court's decision is affirmed.

IS THE STATUTE OF LIMITATIONS FOR A BREACH OF CONTRACT CLAIM BASED ON FAILURE TO PROCURE INSURANCE TOLLED BY LITIGATION BETWEEN THE INSURED AND ACCIDENT VICTIM?

In those instances where "a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the running of the statute of limitations applicable to the remedy is postponed, or if it has commenced to run, is suspended or tolled, during the time the restraint incident to the proceedings continues." *Keith*, 209 Kan. 537, Syl. ¶ 5. The district court here held that nothing prevented Dupass from exercising his legal remedy against the Defendants by the pendency of the legal proceedings for the collision between him and Woofter. Thus, the statute of limitations was not tolled. It is this finding which gives rise to Dupass' second claim of error.

This rule was applied in both *Keith* and *Price*, but, again, both cases are readily distinguishable. In *Keith*, the proceeding that tolled the statute of limitations on the plaintiffs' breach of contract for the failure to procure insurance was necessary in order to determine whether the employer even had workers compensation insurance. That preliminary finding was critical because if the employer did have insurance, then the plaintiffs would have no foundation for a claim that the agency failed to procure insurance. A similar situation arose in *Price* where the claimant was first required to establish that the will was invalid before a claim for faulty preparation and execution of a will could be brought.

13

Dupass' case is distinguishable because the litigation between him and Woofter did not affect whether Defendants failed to procure the insurance requested by Woofter. Even if that litigation resulted in a judgment below Woofter's $100,000 policy limit, Woofter would still have had the same claim for breach of contract against the Defendants. Dupass argues that no actionable claim would have arisen if the Arizona court awarded Woofter an amount less than the policy limits on his vehicle. Yet under this interpretation of the law, a person whose insurance agent has failed to provide the bargained-for motor vehicle insurance would first need to be involved in a collision and have a judgment entered against him or her, in excess of any policy limits, before that person could bring a breach of contract suit against the agent. Such an interpretation is unreasonable.

Dupass further contends that the district court's holding does not square with the principle "that a broker or agent who undertakes to procure insurance for another and thereafter the broker neglects or fails to do so, he will be held liable for any damage resulting therefrom." *Keith*, 209 Kan. at 540-41. He reasons that one cannot hold an agent liable for the necessary damages if the damages are not ascertainable at the time of filing. While it is true that agents are liable for losses resulting from their failure to procure insurance, it does not necessarily follow that damages must be determined before a breach of contract claim for failure to procure may be litigated. Rather, when a breach of contract occurs, a claim can "proceed[] immediately following that breach whether or not actual damage had resulted," and the claimant "would [be] entitled to recover nominal damages, if nothing more." *In re Estate of Talbott*, 184 Kan. 501, 508, 337 P.2d 986 (1959). Again, this situation is distinguishable from a tort action which "does not accrue until actual damage has resulted from the alleged negligence." 184 Kan. at 504. This distinction is why, in cases like *Nungesser*, the insured's tort action against the insurer for bad faith failure to settle had to await a determination that the insured was liable. If the insured is not liable in the underlying litigation, then the insured does not sustain

14

damages from the insurer's failure to settle. Without damages, no cause of action in tort accrues.

Finally, Dupass argues that the need for "[c]onsistency and certainty underlie the policy requiring resolution of the tort damages in the underlying case prior to accrual [of] claims arising from implied contractual duties." Essentially, Dupass' concern is that had Woofter pursued this breach of contract action before the litigation was complete, any remedy from the suit "would be hollow and leave [Woofter] exposed to the damages later awarded in the Dupass case." Dupass notes that damages must be established with a reasonable certainty and here, before the litigation was complete, the damages were too uncertain to be recoverable. See *Source Direct, Inc. v. Mantell*, 19 Kan. App. 2d 399, Syl. ¶ 11, 870 P.2d 686 (1994) ("One who claims damages on account of a breach of contract must not only show the injury sustained but must also show with reasonable certainty the amount of damage suffered as a result of the injury or breach."). Further, if the Arizona court had awarded an amount less than the policy limits on Woofter's vehicle, then no actionable claim would have arisen, which would lead to a waste of judicial time and resources.

Again, the uncertainty of actual damages does not preclude a contract action from accruing. As recognized by the Restatement (Second) of Contracts (1981) and Kansas caselaw, every breach gives rise to a claim for damages, and "[e]ven if the injured party sustains no pecuniary loss or is unable to show such loss with sufficient certainty, he has at least a claim for nominal damages." Restatement (Second) of Contracts § 236, cmt. a; see *In re Estate of Talbott*, 184 Kan. at 508.

Additionally, there are forms of relief other than damages or declaratory relief. The Restatement (Second) of Contracts § 346, cmt. a recognizes that "[a]lthough a judgment awarding a sum of money as damages is the most common judicial remedy for breach of contract, other remedies, including equitable relief in the form of specific

performance or an injunction, may also be available, depending on the circumstances." The Restatement recognizes:

"The exact performance that is promised in a contract may be, in whole or in part, very difficult of enforcement, or it may have become unreasonably burdensome or unlawful. Nevertheless, by exercising its discretion in fashioning the order, the court may be able to substantially assure the expectations of the parties, without undue difficulty of enforcement, unreasonable hardship to the party in breach, or violation of the law. It may command a performance by the party in breach that is not identical with the one that he promised to render." Restatement (Second) of Contracts § 358, cmt. a.

It also states that "[i]n addition to specific performance or an injunction, damages and other relief may be awarded in the same proceeding and an indemnity against future harm may be required." Restatement (Second) of Contracts § 358(3). In some cases, an indemnity against future harm "may be the only remedy that is necessary." Restatement (Second) of Contracts § 358, cmt. c.

Finally, a person injured by an insurance agent's failure to procure insurance may still accrue a tort claim after the damages in the underlying litigation are determined. While this claim is not assignable, which precludes Dupass from bringing such a claim, its availability to an injured party simply reveals that there is an alternative to bringing a breach of contract claim for failure to procure where the damages in such an action remain unclear. The decision between Dupass and Woofter to settle and assign Woofter's claims against the Defendants was a strategic one. That decision does not provide a foundation for changing Kansas' law on the statute of limitations for breach of contract claims.

Dupass' failure to bring the breach of contract action within the statute of limitations is fatal to his claim. The district court's decision to dismiss his petition is affirmed.

Affirmed.