No. 23,028.

JOHN L. WRENCH, *Appellee,* v. GUY W. VON SCHRILTZ,
*Appellant.*

SYLLABUS BY THE COURT.

SPECIAL FINDINGS—*Entitle Defendant to Judgment.* Special findings
considered and *held* to entitle the defendant to judgment notwithstand-
ing the general verdict.

Appeal from Comanche district court; LITTLETON M. DAY,
judge. Opinion filed April 9, 1921. Reversed.

*J. N. Haymaker,* of Wichita, for the appellant.
*Jay T. Botts,* of Coldwater, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The defendant, Guy W. Von Schriltz, was em-
ployed in the office of Dick H. Rich, a real-estate agent at Cold-
water, who had the exclusive agency for the sale of 25,000
acres of ranch land in the southwestern part of Comanche
county belonging to nonresidents. Mr. Rich made a topograph-
ical map of the ranch, and set a price upon it, and the owners
adopted his classification of the lands. He was to sell the land
at any price he saw fit so as to net the owners seven dollars per
acre for all land marked on the plat as pasture land and twenty
dollars per acre for the land marked as cultivated. He sold a
considerable portion of the lands himself, and made other sales
through agents including some made through the defendant,
Von Schriltz. He had also arranged with W. W. Harvey of
Ashland to pay him a commission for any sales to customers
sent by Mr. Harvey.

In January, 1917, the plaintiff, John L. Wrench, went to
Coldwater to see Mr. Rich about buying some of the pasture
land. He had a card of introduction from Mr. Harvey. He in-
quired about terms and Mr. Rich told him that to purchase the
lands he wanted it would take about $5,000 in cash. Wrench
said that he had no ready money, but could give a mortgage on
a farm he owned in Oklahoma. Mr. Rich suggested that he
borrow the money from someone else, and because it was a long
hard trip and the weather was cold, refused to go with him to

look at the land until satisfied that he was able to raise the purchase price. Mr. Wrench insisted on seeing the land and Von Schriltz offered to go and show it to him. Rich was to receive eight dollars an acre for the land, and Von Schriltz priced the land to Wrench at nine dollars an acre. After viewing the land Wrench was satisfied with it and the price, and arranged to buy a tract of something over 2,200 acres.

Plaintiff and defendant went to Ashland where arrangements were made for a loan on the Oklahoma farm belonging to Wrench, and the latter signed a written agreement to purchase the ranch land at nine dollars an acre, which was also signed in the name of Dick H. Rich, by Von Schriltz. The latter telephoned to Rich that he had made a sale, when Rich informed him that it would be necessary to provide or pay Mr. Harvey a commission; that he had made no arrangement with Mr. Harvey as to the amount but wanted to treat him right, and for Von Schriltz to take the matter up with him and see what would be satisfactory. Mr. Harvey was then attending the legislature at Topeka and Von Schriltz wired in Rich's name asking if $500 would be satisfactory and whether Mr. Harvey would take the purchaser's note secured by a chattel mortgage. In reply Harvey telegraphed to Rich and said that the arrangement would be satisfactory. The next day Von Schriltz went to Wrench's place and told him that he would be obliged to pay $500 more to get the land. After some talk Wrench agreed to this. The first contract was then destroyed and a new one was executed by which Wrench was to pay $500 in addition to nine dollars per acre and to give a note secured by chattel mortgage for the additional sum. This agreement Von Schriltz signed in his own name.

Some time after the sale had been completed and after the purchaser had been put into possession of the property he brought this action against Von Schriltz to recover damages. Two causes of action were submitted to the jury; one in which it was claimed that the $500 additional consideration was obtained from the plaintiff by the false representations and fraud of the defendant. The alleged fraud was that defendant falsely represented to plaintiff that it was the owners of the ranch who raised the price $500. Plaintiff claimed that relying upon that statement, he entered into the new contract which he carried out.

In the other cause of action it was alleged that the defendant falsely represented that the particular tract he was showing plaintiff included about 70 acres of tillable land; that the plaintiff relied upon this representation; and that it was false. Plaintiff asked as damages the difference between the value of the land as represented, and as it turned out to be.

The jury returned a general verdict in favor of plaintiff for $1,072.50, upon which the court rendered judgment. The defendant appeals, and assigns a number of trial errors.

In our opinion the first cause of action should never have gone to the jury. Two days after plaintiff had made an agreement to take the land at nine dollars an acre he was told that before the sale could be completed he would have to pay $500 additional. The only dispute in the evidence on this cause of action was whether, as plaintiff testified, defendant told him it was the owners of the land who had raised the price or whether, as the defendant testified, he told plaintiff he had phoned to Mr. Rich and that Rich had raised the price $500, and that the land would cost plaintiff that much more. What possible purpose or motive the defendant could have for misrepresenting who it was that had raised the price, is not apparent. The difference between the two statements is hardly more than the difference between tweedle-dum and tweedle-dee, and under all the circumstances of this case could not amount to actionable fraud. How could it possibly concern the plaintiff whether he understood that it was the owners who raised the price or someone else who had control of the sale? His testimony is that when the price was raised he told the defendant that he had bought the land for nine dollars an acre and thought he ought to have it; "I told him of course if I had to pay the $500, I would like to have that land; I needed it for pasture land"; that he believed what was told him that Mr. Rich had wired defendant that the owners of the land had raised the price $500 on him; that he then signed the new contract.

The plaintiff knew that the first contract he had signed was not enforceable; that it was not made with the owners of the land or with an agent possessing authority to bind the owners; that in fact he was dealing with a subagent. For whatever reason the price was raised he consented to destroy the first contract and to enter into a new one to purchase the land at the increased price.

Wrench v. Schriltz.

However, the court submitted the cause of action to the jury —but with an instruction that plaintiff could not recover if the jury found that Mr. Rich had the exclusive sale of the property and the terms at which it would be sold, because in that event Rich would stand, so far as the plaintiff was concerned, in the position of the owners. The jury made a finding that Rich had the exclusive agency for the sale of the land at any price he desired to fix above the sum of seven dollars per acre. Under the law of the case and the special finding the defendant was entitled to judgment on this cause of action.

In a special finding the jury stated that they allowed plaintiff as damages for the raise in the price of the land, $1,072.50 (which was the exact amount of the general verdict), and in answer to another question submitted by plaintiff, stated that they allowed plaintiff $500 for the difference between the value of the tract shown him by defendant and that actually conveyed to him. On its own motion the court set aside the latter finding, but nevertheless rendered judgment in favor of plaintiff for the full amount of the verdict.

On the second cause of action the defendant was entitled to judgment on the special findings numbers 7, 8, 9, 10, 11, 12 and 15. In these the jury said, in substance, that the plaintiff had an equal opportunity with the defendant for ascertaining whether or not the 70 acres upon which the branding pens are located were east or west of the true line of the land he was purchasing; that the defendant did not fraudulently represent to plaintiff that all the so-called level land was on the tract he was seeking to sell plaintiff; that the exact location of the west line of the land purchased by plaintiff was a matter of uncertainty on the part of both plaintiff and defendant; that there was no point on the west line except at the north end which was definitely known to anyone at the time the land was shown to plaintiff; that the true line between the Hall land and the land purchased by Wrench is at the present time a matter of doubt and uncertainty; that there never has been an official survey of the line between the two tracts, and that there was no way by which the parties could ascertain the true dividing line at this point and determine where it was.

Under the instructions on this cause of action and the special findings, the defendant was entitled to judgment.

The judgment is reversed and the cause remanded with directions to render judgment against plaintiff for costs.