(627 P.2d 1161)

No. 51,810

H & H Farms, Inc., *Appellant and Cross-Appellee,* v. Vern Hazlett and Farm & Ranch Realty, Inc., *Appellees and Cross-Appellants.*

Opinion filed May 8, 1981.

*John F. McClymont,* of Ryan, Kent, Wichman, Walter & McClymont, of Norton, for appellant and cross-appellee.

*Kenneth Clark,* of Clark & Shelton, of Hill City, for appellees and cross-appellants.

Before Justice Prager, presiding, Abbott, J., and J. Patrick Brazil, District Judge, assigned.

Abbott, J.: This is an action brought by the appellant, H & H Farms, Inc., (the purchaser of farmland) against appellees, Vern Hazlett and Farm & Ranch Realty, Inc., (a real estate broker and his agency). Appellant alleges fraudulent misrepresentation, mutual mistake of fact and unjust enrichment by the realtor, and seeks to recover actual and punitive damages. The realtor counterclaimed for malicious prosecution.

The trial court granted summary judgment against H & H Farms on its claims against appellees and against appellees on their counterclaim against H & H Farms. Both parties appeal. The issue presented by both is whether the trial judge erred in granting summary judgment.

This lawsuit arose as a result of the sale of a section of land in Thomas County, Kansas. The land was owned by Eula M. Miller, a resident of Ojus, Florida. Mrs. Miller is not a party to the lawsuit. Craig Hills (Hills), the secretary of and a shareholder in

H & H Farms, wrote Mrs. Miller in March 1978, expressing an interest in purchasing the land and confirming a telephone offer of $550 an acre for it. He wrote Mrs. Miller a second letter in May 1978, informing her that the corporation was still interested in purchasing the section. Mrs. Miller indicated she would discuss selling the land when she returned to Kansas for harvest. On June 21, 1978, Mrs. Miller wrote Hills and informed him she was staying at her daughter's home in Scottsbluff, Nebraska, and furnished Hills with her address. She also informed him that she had decided not to sell the land at *auction,* but would accept sealed bids instead, and told him she would advertise that fact in the Colby, Kansas, and Denver, Colorado, newspapers.

Vern Hazlett (Hazlett) read Mrs. Miller's advertisements concerning sale of the land. He obtained her phone number in Nebraska and called her on June 26, 1978, in an attempt to secure a listing for Farm & Ranch Realty, Inc. (Farm & Ranch). Mrs. Miller stated she planned to sell the property herself by accepting sealed bids, and she refused to allow him to list the property. The following day, Hills submitted a bid in the amount of $725 per acre. He stated that he and his brother would like a chance to match the highest bid because they wanted the land very much. Mrs. Miller called Hills early in July concerning terms of any sale. She had by then received a bid from a third party for $750 an acre. Hills wrote Mrs. Miller on July 8, 1978, and offered to match the high bid, plus $5,000.

The first contact between Hills and Hazlett occurred on July 17, 1978, when Hills called Hazlett and during the conversation authorized Hazlett to offer a bid of $850 an acre. Hazlett called Mrs. Miller and told her he had a potential buyer who would pay $850 an acre. Although there is some dispute about the Hazlett-Miller telephone conversation, a fair interpretation is that Mrs. Miller was to net $850 an acre and she agreed to a sale on that basis. Hazlett called Craig Hills and stated that Mrs. Miller would not accept $850 an acre, but would accept $875. The extra $25 per acre was the exact amount of the real estate commission and would net $850 an acre to Mrs. Miller. Hills, as agent for H & H Farms, agreed to pay $875 per acre. Mrs. Miller then learned that the buyer was H & H Farms. A contract which Hazlett prepared that in part authorized the payment of a $15,000 real estate commission to Farm & Ranch was signed by Hills on

behalf of H & H Farms. Mrs. Miller did not sign that contract, because she wanted a contract prepared by a Kansas lawyer. Two days after the oral agreement to sell the land, Mrs. Miller came to Kansas and subsequently a contract was prepared by her Kansas lawyer. The lawyer for H & H Farms examined the contract, and it was executed after a minor change not germane to the issue in this case was made. The contract specifically provided that Mrs. Miller was to pay a $15,000 commission to Farm & Ranch. H & H Farms complained to its lawyer about the commission prior to the contract's having been delivered to Mrs. Miller, but went ahead and delivered it without complaint to either Mrs. Miller or Hazlett.

This lawsuit was filed by H & H Farms, seeking both actual and punitive damages for the alleged fraud of Hazlett and Farm & Ranch and claiming mutual mistake of fact, and claiming that Farm & Ranch was not the efficient procuring cause of the sale. A counterclaim was filed on the theory of malicious prosecution. This appeal followed the trial court's granting of summary judgment against each party's cause of action.

It is first argued that the trial court erred in granting summary judgment on the issue of fraudulent misrepresentation. Summary judgment is proper only if there are no genuine issues of material fact. A trial court, in ruling on motions for summary judgment, should search the record to determine whether issues of material fact do exist. *Dugan v. First Nat'l Bank in Wichita,* 227 Kan. 201, ¶¶ 1, 2, 606 P.2d 1009 (1980). An appellate court, in examining the validity of a motion for summary judgment, should read the record in the light most favorable to the party who defended against the motion. It should accept such party's allegations as true, and it should give it the benefit of the doubt when its assertions conflict with those of the movant. *Collier v. Operating Engineers Local Union No. 101,* 228 Kan. 52, ¶ 2, 612 P.2d 150 (1980).

The essence of Hill's theory of fraud revolves around the fact that Hazlett informed Hills that Mrs. Miller would sell the land for $875 an acre when it appears she was willing to sell for $850 an acre. Hills contends that Hazlett had a duty to communicate to him the fact that Mrs. Miller was willing to sell 600 acres for $850 an acre, and that the additional $25 an acre was tacked on to provide a commission to Farm & Ranch. The breach of this duty,

Hills argues, amounted to fraudulent misrepresentation against H & H Farms for which it is entitled to recover the commission. Case law around the country is split on this issue. In Annot., 55 A.L.R.2d 342, 346, the case law on this point is summarized:

"The theory prevailing in some of the cases on this topic appears to be that if the real-estate agent or broker enters the transaction as agent of the vendor, the only duties resting upon the agent or broker are those which he owes to his principal, the vendor, and he has no legal duty whatever to the prospective or ultimate purchaser of the realty. Other courts, however, have considered that although, in this situation, the real-estate agent is primarily the agent of the vendor, he nevertheless is under certain legal duties to the prospective purchaser and does not stand exactly in the vendor's shoes, in so far as representations concerning the vendor's minimum price are concerned, and has the duty to truthfully communicate offers from the vendor to the prospective purchaser and offers from the prospective purchaser to the vendor and that such duties are owed to the prospective purchaser as well as to the vendor.

. . . .

"As shown in the cited sections, the purchaser's theory ordinarily has been that by falsely overstating the vendor's minimum price and thereby inducing the purchaser to buy the property at the overstated price, the vendor's agent or broker committed an actionable fraud against the purchaser. The courts are not agreed as to whether such misconduct is actionable fraud, as against the purchaser, under ordinary circumstances, nor, generally, as to what circumstances may suffice to present a case of actionable fraud in this general situation."

In this case, H & H Farms knew prior to delivering the executed contract to Mrs. Miller that Hazlett was charging a real estate commission, the amount of the commission, and that Mrs. Miller was to pay the commission out of the sale price. H & H Farms discussed the commission with its lawyer and went ahead with the purchase. Hills testified the land was worth $875 an acre at the time of the sale.

We view *Wrench v. Von Schriltz*, 108 Kan. 748, 197 Pac. 197 (1921), as somewhat analogous. In that case, a real estate agent, Dick Rich, had the exclusive agency for the sale of a large amount of ranch land which he was to sell at any price he saw fit as long as he would net seven dollars per acre to the owners for the pastureland. Rich had also arranged with a Mr. W. W. Harvey to pay Harvey a commission for sales to any customers which Harvey sent in. Wrench, who had a card of introduction from Harvey, inquired of Rich about buying some of the land; as a result, defendant (an agent employed in Rich's office) took Wrench to inspect the land and procured a written agreement wherein Wrench agreed to purchase the land at nine dollars per

acre. When defendant notified Rich that he had made a sale, Rich informed defendant that it would be necessary to pay a commission to Harvey. Defendant then communicated with Harvey and found that $500 would be a satisfactory commission. Defendant then went to Wrench and told him that he would be obliged to pay $500 additional to get the land, at which time defendant and Wrench executed a new contract for $500 in addition to the nine dollars per acre originally agreed upon. Wrench later sued under a theory of fraud and misrepresentation to recover the $500 from the defendant. The Kansas Supreme Court ruled that even if it was assumed defendant in obtaining the additional $500 from Wrench had represented that it was the owner of the land instead of Rich who had raised the price $500, Wrench had no cause of action under the circumstances. Specifically, the court stated:

"The only dispute in the evidence on this cause of action was whether, as plaintiff testified, defendant told him it was the owners of the land who had raised the price or whether, as the defendant testified, he told plaintiff he had phoned to Mr. Rich and that Rich had raised the price $500, and that the land would cost plaintiff that much more. What possible purpose or motive the defendant could have for misrepresenting who it was that had raised the price, is not apparent. The difference between the two statements is hardly more than the difference between tweedle-dum and tweedle-dee, and under all the circumstances of this case could not amount to actionable fraud. How could it possibly concern the plaintiff whether he understood that it was the owners who raised the price or someone else who had control of the sale?" *Wrench v. Schriltz,* 108 Kan. at 750.

The record reflects that Hazlett was authorized to sell the property for Mrs. Miller at the time the statement was made to Craig Hills, and he had full knowledge of the material facts when he executed and delivered the contract as authorized agent for H & H Farms. The trial court did not err in granting summary judgment in favor of defendants on this issue.

Appellant next urges that there was a mutual mistake common to both H & H Farms and Mrs. Miller, and by reason of that mistake each of the parties entered into a contract at a price neither intended. We are of the opinion appellant's argument is without merit. Appellant does not seek to rescind the contract; it seeks to reform the contract to exclude the paragraph providing that Mrs. Miller would pay Farm & Ranch a $15,000 real estate commission. Mrs. Miller is not a party to this action and thus is not claiming mutual mistake. She was fully aware of the contract provision for the payment of the commission; and although she

expressed some displeasure of that paragraph and the amount being in the contract, she fully understood its meaning, executed the contract with full knowledge of its contents, and has not requested a rescission. In short, H & H Farms does not have a cause of action against Farm & Ranch to reform the contract, and the trial court did not err in granting summary judgment against H & H Farms on its second cause of action.

Appellant argues that Farm & Ranch was not entitled to a commission because Hazlett was not the efficient procuring cause of the sale and the sale would have occurred without his help.

There is no quarrel among the parties regarding the general rule applicable in this case; that to be entitled to a commission, a broker must establish that the broker has produced a buyer who is able, ready and willing to purchase on the proper terms or on terms acceptable to the principal and that the broker was the efficient procuring cause of a consummated deal. *Winkelman v. Allen,* 214 Kan. 22, 519 P.2d 1377 (1974). Mrs. Miller testified in her deposition as follows:

"Q. Well, then as a result of Mr. Hazlett's call, he finally got you and Mr. Hill together, didn't he; just yes or no.
"A. Yes.
"Q. And you benefited from that contract that Mr. Hazlett arranged, didn't you?
"A. Yes.
"Q. And you accepted those benefits?
"A. Yes."

Craig Hills also testified:

"Q. Well, you hadn't been able to buy this property from Mrs. Miller despite all your efforts, had you?
"A. Up to the—
"Q. (interrupting) Up to the time Mr. Hazlett got into it, isn't that right?
"A. Yes sir.
"Q. And as a result of his efforts, you were able to buy the property, weren't you?
"A. I guess I'd have to say yes sir."

Even if we were to agree that appellant is the real party in interest and has standing to challenge a real estate commission which it had no contractual obligation to pay, it would not benefit appellant; for the uncontroverted evidence by the seller and by an officer of the buyer company sufficiently establishes that Vern Hazlett was the procuring cause of the sale. The trial judge did not err in granting summary judgment to Farm & Ranch on this issue.

The elements of malicious prosecution in a civil proceeding were recently set out by the Supreme Court in *Nelson v. Miller,* 227 Kan. 271, 276, 607 P.2d 438 (1980):

"To maintain an action for malicious prosecution of a civil action the plaintiff must prove the following elements:

(a) That the defendant initiated, continued, or procured civil procedures against the plaintiff.

(b) That the defendant in so doing acted without probable cause.

(c) That the defendant acted with malice, that is he acted primarily for a purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based.

(d) That the proceeding terminated in favor of the plaintiff.

(e) That the plaintiff sustained damages."

Kansas law is well settled that one of the crucial elements of an action for wrongful use of civil proceedings is that the prior civil proceeding must have terminated in favor of the person against whom the prior civil action was brought, and that the action cannot be brought if the original action is still pending and undetermined. See *Nelson v. Miller,* 227 Kan. at 280; *Harper v. Cox,* 113 Kan. 357, 214 Pac. 775 (1923). Although Kansas courts have not ruled on the specific question of whether a malicious prosecution claim can be brought in a counterclaim, other courts have had opportunity to address the issue. Prosser on Torts § 120 n. 32 (4th ed. 1977) states the general rule that a plaintiff must prove the termination of former proceedings in his favor and that this requirement ordinarily makes the counterclaim for malicious prosecution in the original civil action premature. See *American Salvage and Jobbing Co., Inc. v. Salomon,* 295 So. 2d 710 (Fla. Dist. Ct. App. 1974); *Metro Chrysler-Plymouth, Inc. v. Pearce,* 121 Ga. App. 835, 175 S.E.2d 910 (1970); *Peisner v. Detroit Free Press,* 68 Mich. App. 360, 242 N.W.2d 775 (1976). Furthermore, a plaintiff's cause of action for malicious prosecution does not accrue until the time for appeal has passed on the original action. See *Rich v. Siegel,* 7 Cal. App. 3d 465, 86 Cal. Rptr. 665 (1970).

A case with remarkably similar facts and precisely the same issue was recently decided by the Montana Supreme Court. In *First Trust Co. of Montana v. McKenna,* _____ Mont. _____, 614 P.2d 1027 (1980), the seller of a ranch brought an action against the real estate broker to recover a commission, and the broker counterclaimed against the seller for malicious prosecu-

tion. The trial court dismissed the broker's counterclaim, and on appeal the Supreme Court affirmed the dismissal, stating:

"In actions for malicious prosecution the party bringing the action must prove that there has been a termination of proceedings. This rule has been stated as follows:

" '. . . On the other hand, an action for malicious prosecution may not be asserted by way of cross-complaint or counterclaim in the original proceedings, prior to its termination, since *it is essential that the original proceeding shall have been previously terminated in favor of the party bringing the malicious prosecution action.* Hence a counterclaim purporting to set forth a cause of action in malicious prosecution is properly dismissed as premature. . . .' (Emphasis added.) 52 Am. Jur. 2d, *Malicious Prosecution* § 14 at 195.

"In *Bollinger v. Jarret* (1965), 146 Mont. 355, 406 P.2d 834, this Court said:

" 'It is also contended that it was error for the court to render summary judgment against appellant-buyer's counterclaim. The basis of the counterclaim was that the sellers' action wrongfully injured the credit standing of the buyers. The only possible grounds for such a claim are libel and malicious prosecution, neither of which can be sustained here. . . . And malicious prosecution founded on a civil action is not the proper subject of a counterclaim since it requires proof of termination of the former proceeding in favor of the defendant therein. *Baker v. Littman,* 138 Cal. App. 2d 510, 292 P.2d 595; 54 C.J.S. *Malicious Prosecution* § 54, p. 1021.' " 614 P.2d 1032-33.

Hazlett argues that K.S.A. 60-218 allows a malicious prosecution action to be maintained as a counterclaim. Montana has, as has Kansas, adopted Fed. R. Civ. P. 18 (Mont. R. Civ. P. Rule 18, and K.S.A. 60-218). Thus, Montana was considering an identical statute and nearly identical issues. Other jurisdictions have held that it is premature to plead a claim for damages that arises from malicious prosecution before the final determination of that action is made. See *Union Nat. Bank v. Universal-Cyclops Steel Corp.,* 103 F. Supp. 719, 720 (W.D. Pa. 1952), and cases cited therein. K.S.A. 60-218(*b*) and 60-213 do appear on their face to allow a defendant to file a counterclaim for malicious prosecution. We are of the opinion, however, that our Supreme Court has determined that a civil action for malicious prosecution cannot be maintained until the proceedings have terminated in favor of the party seeking the action, and that rule of law applies to either a petition or a counterclaim. We are aware of *Stripling v. Star Lumber & Supply Co., Inc.,* 216 Kan. 507, 510, 532 P.2d 1101 (1975), wherein the Supreme Court considered a counterclaim for malicious prosecution. As we read that case, however, the issue presented in the case before us was neither presented nor considered there and we do not consider it as authority for defend-

ant's position. We hold that a claim for malicious prosecution founded on a civil action is not the proper subject of a counterclaim since it requires proof of the termination of the former proceeding in favor of the defendant.

Affirmed.