**MO–KAN TEAMSTERS PENSION FUND, et al., Plaintiffs,**

v.

**Robert J. CREASON, d/b/a Kansas Cartage Company, et al., Defendants, Third-Party Plaintiffs,**

v.

**William G. HAYNES, Third-Party Defendant.**

Civ. A. No. 84–2268–S.

United States District Court, D. Kansas.

June 26, 1987.

Michael C. Arnold, Michael G. Newbold, Yonke, Shackelford & Arnold, Kansas City, Mo., George A. Groneman, White & Groneman, Kansas City, Kan., for plaintiffs.

Susan M. Zimmerman, Dennis M. Clyde, Gates & Clyde, Chartered Financial Plaza, Overland Park, Kan. for defendants/third party plaintiff.

Arthur E. Palmer, Goodell, Stratton, Edmonds & Palmer, Topeka, Kan., for third-party defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

Presently before the court are three separate summary judgment motions, filed by the defendant, the third-party plaintiff, and the third-party defendant. Although this lawsuit carries a 1984 filing date, the litigation between these parties began in 1976, proceeded through a trial and appeal, and is now entering its eleventh year. The dispute is whether an employer is liable to several labor union fringe benefit funds for admittedly unpaid contributions for the years 1977–82. The court has carefully reviewed the history of this litigation and the briefs submitted by the parties, and is prepared to rule on the three motions for summary judgment.

The court will briefly discuss the early history of this case with the aid of Chief Judge Earl E. O'Connor's opinion in *Mo-Kan Teamsters Pension Fund. v. Robert J. Creason d/b/a Kansas Cartage Co.*, No. 76–228–C2, slip op. (D.Kan., *unpublished*, Apr. 16, 1981), *aff'd*, 716 F.2d 772 (10th Cir.1983), which was a predecessor lawsuit involving liability for contributions to these same funds for an earlier period of time. Plaintiff Mo-Kan Teamsters Pension Fund (Pension Fund) is a trust fund existing and established pursuant to the Labor Manage-

ment Relations Act, Section 302, 29 U.S.C. § 186. The Pension Fund is an employee benefit plan within the meaning of Section 3 of the Employee Retirement Income Security Act, 29 U.S.C. § 1002. The Pension Fund was established on October 13, 1969, pursuant to a collective bargaining agreement between the Builders' Association of Kansas City (an association of local companies) and Local Union 541, which is affiliated with the International Brotherhood of Teamsters (Teamsters Local 541). Plaintiff Mo-Kan Teamsters Health and Welfare Fund is a trust fund holding the same status under the law as the Pension Fund. It was also established under the same collective bargaining agreement.

Defendant Robert J. Creason d/b/a Kansas Cartage was, at the time of the earlier lawsuit, an individual doing business in the states of Missouri and Kansas in addition to other states. His business was trucking or cartage, and he had employees driving over-the-road and performing millwright work. According to this defendant, he ceased doing business as Kansas Cartage Company on December 5, 1979, on which date defendant Kansas Cartage Company, a corporation, was formed and incorporated, although plaintiffs contend this was a mere change in form but not substance.

Third-party defendant William Haynes is an attorney who represented defendant Robert Creason in the initial litigation. Creason terminated Haynes' employment in August, 1981, within months of the April 16, 1981 opinion in the first lawsuit, in which Chief Judge O'Connor found Creason liable to the funds.

Creason did not belong to the Builders' Association and therefore was not a party to the collective bargaining agreement, but the union picketed his business on March 14, 1971, to protest his refusal to make payments into the funds. After a meeting with a trustee of the funds, Creason executed a contract stipulation with Teamsters Local 541 on March 15, 1971, although Creason later unsuccessfully claimed that he never signed the stipulation. The contract stipulation provided, among other things, that Creason would be bound by the

terms of the collective bargaining agreement then in effect between the Builders' Association and Teamsters Local 541. Plaintiffs have termed this a "me-too" agreement. The stipulation also provided that it would remain in effect until five years from the date of its execution, and would automatically renew itself for regular three-year intervals unless Creason or the union gave written notice of a termination no more than 90 days and no less than 60 days prior to the relevant five- or three-year anniversary date. The collective bargaining agreement to which Creason was bound pursuant to the contract stipulation provided for employer payments to union fringe benefit trust funds. Creason therefore agreed to contribute to each of the plaintiff funds various sums per hour for each employee covered by the collective bargaining agreement. The contributions for each month were to be submitted to the funds no later than the tenth of the following month, so the contributions for April, 1971 were to be submitted by Creason no later than May 10, 1971.

From the very beginning of the contractual relationship, Creason failed to fully comply with the contribution requirement. He made only partial contributions, although this appears to have been the result of an unenforceable oral agreement between the parties. Creason's last payment into the funds was in December, 1976. Immediately prior to that, plaintiffs had filed suit against defendant, on November 16, 1976. It appears that defendant Creason's last payment into the funds was essentially contemporaneous with the filing of his answer to plaintiffs' complaint, on December 29, 1976. Within several weeks, on January 24, 1977, creason's attorney, third-party defendant Haynes, sent a letter to a union official that purported to give "written notice of termination of the Joint Agreement which is presently in effect until March 31, 1977." The collective bargaining agreement between Local 541 and the Builders' Association was in effect until March 31, 1977, but the only agreement to which Creason was a party, the contract stipulation, had had its five-year anniversary in March, 1976 and was not to reach its

subsequent three-year anniversary until March, 1979. For this reason and others, Chief Judge O'Connor held that the letter did not comply with the notice requirements and was not effective to terminate defendant's obligation under the contract stipulation.

Defendant Kansas Cartage Company, the corporation, was incorporated in late 1979 during the pendency of the first lawsuit, and since December 18, 1980, 45% of the outstanding shares of the corporate stock has been held by defendant Creason. Plaintiffs never joined the corporation as a defendant in the original lawsuit, nor has it been established that they had any actual knowledge of the existence of the corporation before the trial in the first suit. The trial occurred in January, 1981, and Chief Judge O'Connor's decision was rendered on April 16, 1981. Unfortunately, although the opinion clearly delineated the amounts that Creason owed to the funds, it did not indicate the time period, and specifically the final date, for which the court was awarding damages against Creason. Because his breach of contract was continuous, from 1971 through March, 1982, this presents a difficult question as to the amount of damages that plaintiffs can claim in this case.

During the pendency of the first suit, Creason again missed an opportunity to cancel his obligation to the fund immediately prior to the three-year interval ending in March, 1979, but he finally submitted an effective notice of termination for the period ending in March, 1982. A notice of termination could have been given between December 15, 1978 and January 15, 1979, which would have cut off Creason's liability beyond March, 1979, but attorney Haynes advised Creason not to send a termination letter. Haynes contends that he so advised Creason based on his belief that such a letter might somehow discredit Creason's claim that Creason had never signed a contract stipulation with the union. On appeal, the Tenth Circuit affirmed Chief Judge O'Connor on September 6, 1983. The final step in this earlier litigation ended on January 9, 1984, when the United

States Supreme Court denied Creason's application for writ of certiorari.

The complaint in the present case was filed on July 2, 1984. Plaintiffs seek a judgment against defendants in an amount equal to the number of hours (determined by an accounting) to have been worked by teamster employees covered by the pertinent collective bargaining agreement multiplied by the contribution rates for the period April 1, 1977 (coinciding with the renewal date for the collective bargaining agreement that superseded the agreement which expired on March 31, 1977), through and including March 15, 1982 (the date that plaintiffs concede defendants legitimately terminated their obligation). Plaintiffs also request audit costs, attorney's fees, and costs of the action. Plaintiffs contend that the defendants should be held jointly and severally liable for these obligations because Kansas Cartage Company, the corporation, is the alter ego of Robert Creason. The plaintiffs apparently chose April 1, 1977 as the beginning date for liability in the second lawsuit based on the fact that the audit upon which damages in the first lawsuit was based was conducted only for a period from March, 1971 through March, 1977. Plaintiffs apparently believe that Judge O'Connor's decision awarded damages only through March, 1977, and that they are now entitled to recover the remainder of defendants' obligation.

Defendants do not dispute that they contributed nothing to the funds during the entire period from April 1, 1977 through March 15, 1982. In fact, at least as to defendant Creason, he does not contend that he in fact had no legal obligation to pay the funds during that period. Rather, the defendants contend that the statute of limitations or some other estoppel mechanism prevents plaintiffs from seeking damages and, in addition, that defendant Kansas Cartage Company, the corporation, cannot be held liable for defendant Creason's obligations. The court will first address the defendants' summary judgment motion and then will turn to the motions filed by the third-party litigants.

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). An issue of fact is "material" only when the dispute is over facts that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). The language of Rule 56(a) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986).

## I. STATUTE OF LIMITATIONS ON PLAINTIFFS' CLAIM

Defendants first argue that any effort to collect delinquent contributions due prior to July 2, 1979, is barred under the Kansas five-year statute of limitations for written contract actions, K.S.A. 60–511(1), which applies to suits in which a written employee pension benefit plan agreement is sought to be enforced. *See Jenkins v. Local 705*, 713 F.2d 247, 250–53 (7th Cir. 1983); *see also Auto Workers v. Hoosier Corp.*, 383 U.S. 696, 705–07, 86 S.Ct. 1107, 1113–14, 16 L.Ed.2d 192 (1966). This would eliminate plaintiffs' claim for contributions

for the months April, 1977 through May, 1979. Plaintiffs' first argument in opposition is that Judge O'Connor's decision established defendant Creason's liability for damages during the time period April 1, 1977 to June 1, 1979 and beyond. Plaintiffs therefore assert entitlement to an assessment of damages against defendants for that time period.

The court does not agree with the premise of plaintiffs' argument. Earlier in their brief, plaintiffs indicated that as to the first lawsuit, an accounting of damages had been accomplished only for a period ending in March, 1977. Therefore, plaintiffs did not put forth evidence on damages subsequent to that date, and there would have been no basis for Judge O'Connor to make an award of damages for a period subsequent to March, 1977. Defendant Creason had written to plaintiffs in an attempt to terminate his obligation to the fund as of March 31, 1977. It is entirely probable that plaintiffs simply failed to request for damages subsequent to March, 1977, in anticipation that defendant's obligation was terminated as of that date, although Judge O'Connor later found that Creason's attempted termination was ineffective. Additional support discrediting plaintiffs' present argument can be found in plaintiffs' complaint:

> An audit of the books and records of defendant, Robert J. Creason d/b/a Kansas Cartage Company, covering the period March 15, 1971, through March 31, 1977, has been performed and said defendant's liability to plaintiffs for said period has been reduced to final judgment in Case No. 76–228–C2; defendants have failed and refused to submit remittance reports and contributions to Plaintiffs from April 1, 1977, through and including March 15, 1982, and Plaintiffs are unable to determine the number of hours worked by teamsters employees of defendants and/or the amount of contributions owed by Defendants, for said period without an accounting of the books and records of Defendants.

The foregoing leads this court to disagree with plaintiffs' first contention and to find that the present lawsuit involves unpaid contributions for the period from April 1, 1977 to March 15, 1982, contributions that were not assessed in Judge O'Connor's decision.

Although Judge O'Connor determined that as of the date of the opinion, April 16, 1981, defendant Creason continued to be obligated under the contract stipulation, his statement was directed only toward establishing Creason's liability under the contract and the contract's validity, and it was not intended to constitute a judgment in favor of plaintiffs for contributions due up to and including the date of the opinion. On the basis of the accounting, the plaintiffs were seeking damages only for a period ending March 31, 1977. They had the right to request damages for any time period they desired, and Judge O'Connor's opinion encompasses only the requested period. Therefore, they must comply with the statute of limitations in a suit that seeks damages for a period commencing in April, 1977.

Plaintiffs' next defense to defendants' statute of limitations claim is that the running of the statute was tolled by the appeal filed in Case No. 76–228–C2. This argument goes as follows: The earliest contributions for which damages are presently being claimed, the contributions for April, 1977, were due on May 10, 1977. The five-year statute of limitations would have begun to run on that date. The earliest expiration date would have been May 9, 1982. On June 10, 1981, defendant Creason filed his appeal of Judge O'Connor's decision. This was four years and one month after May 10, 1977. The tolling continued until the Supreme Court denied certiorari on January 9, 1984. From that date, plaintiffs had eleven months in which to file their claim if they wished to include amounts dating from May, 1977. Plaintiffs in fact filed their claim on July 2, 1984, within the statute of limitations as enlarged. The law relied upon by plaintiffs in taking this position is as follows: "It is well-settled law in both Kansas and Missouri that where a party is prevented from exercising a legal remedy by pendency of legal proceedings, there is a legal exception

from the running of a statute of limitations. This legal exception is available where proceedings are provoked, induced or promoted by the other party (in this case, Robert J. Creason)." Plaintiffs' Memorandum in Opposition, at 16–17. The following statement by the Kansas Supreme Court forms the basis for plaintiffs' argument:

> The rule in this jurisdiction is that if a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the running of the statute of limitations applicable to the remedy is postponed, or if it has commenced to run, is suspended or tolled, during the time the restraint incident to the proceeding continues.

*Keith v. Schiefen-Stockham Ins. Agency, Inc.*, 209 Kan. 537, 544, 498 P.2d 265, 272 (1972) (quoting *In re Estate of Brasfield*, 168 Kan. 376, 214 P.2d 305 (1950)). In both the *Keith* case and the other decision cited by plaintiffs, *Price v. Holmes*, 198 Kan. 100, 422 P.2d 976 (1967), the court found it sufficient that a party was *effectively* prevented from exercising a legal remedy. The *Price* court in part relied upon a case in which one party desiring to bring a damage suit for breach of contract was effectively prevented by the other party's suit challenging the validity of the contract. Once the original suit was completed, the party seeking damages brought suit, but the opposing party raised the defense of the statute of limitations. The court ruled that the running of the statute was suspended during the pendency of the validation proceedings. *See Price*, 198 Kan. at 108, 422 P.2d at 983 (discussing *Lee C. Hess Co. v. City of Susanville*, 176 Cal.App.2d 594, 1 Cal.Rptr. 586 (1959)).

The court finds that plaintiffs were effectively barred from bringing a damage suit against defendants during the pendency of the appeal of Judge O'Connor's decision. On appeal, defendant Creason challenged the validity of the contract stipulation and the determination of whether he had effectively terminated his obligation. Until these were decided, an additional lawsuit concerning unpaid contributions after March 31, 1977 would have been a potentially fruitless and costly act, and it may even have been subject to dismissal for lack of ripeness. The courts of Kansas have not been willing to impose such a heavy burden on parties seeking legal redress. Therefore, the running of the statute of limitations was tolled at least from June 10, 1981 (the date the appeal was filed) to September 6, 1983 (the date on which the Tenth Circuit filed its opinion). As plaintiffs point out, this left approximately 11 months in which to file a suit for damages arising out of the unpaid contribution of May 10, 1977. Plaintiffs filed their suit July 2, 1984, approximately 10 months later. The action is timely.

## II. LIABILITY OF CORPORATION

■ Defendant Kansas Cartage Company, the corporation, next argues that it cannot be held liable for the damages claimed by plaintiffs because it was not a signator to the contract stipulation. Furthermore, defendant argues that plaintiffs knew of its existence before the trial in the original lawsuit, failed to join it in that action, and are estopped now from seeking damages against it for any period prior to the date of incorporation. Defendant takes great pain in stressing that the court cannot bind the corporation to the judgment in the 1976 lawsuit because it was not a party. The court disagrees with defendant. The plaintiffs are merely arguing that in 1979, Creason converted his business from a sole proprietorship to a corporation, and Creason should not be able to shield his assets through such a device. The defendant has given this court no basis upon which to find that Kansas Cartage Company is not the alter ego of Creason, and the court cannot now hold as a matter of law that Kansas Cartage Company, the corporation, should not be required to pay damages for obligations originally assumed by Robert Creason. Nor has defendant sufficiently demonstrated to this court that plaintiffs had knowledge of the existence of the corporation at a time when they could have joined the corporation in the original lawsuit. In fact, in a brief filed by Creason in connection with attorney

Haynes' motion for summary judgment, he states that at the time of incorporation of Kansas Cartage Company:

Robert J. Creason transferred all of the assets of his sole proprietorship to the corporation. Kansas Cartage Company, a corporation, continued doing the same business as the sole proprietorship, doing business with the same customers, using the same business address, same telephone number and same employees. All assets and liabilities of the sole proprietorship, then known and existing, were transferred to the corporation. Haynes had advised Creason that the incorporation had no effect on the matters he was handling.

Response of Third Party Plaintiffs to Motion of Third Party Defendant for Summary Judgment, at 65. Plaintiffs would have had no objective indication that Creason had incorporated.

Finally, defendants argue that plaintiffs should have obtained relief in the first lawsuit for all monthly contributions due prior to judgment, and they cannot now recover for amounts due on or before the date of the Journal Entry of Judgment in Case No. 76–228–C2, May 29, 1981. The court finds that this argument is unpersuasive. A litigant cannot be required to provide a court at trial with absolutely current evidence on damages when the accumulation of that data requires a lengthy and costly audit, as it did in this case. The original suit was filed in 1976. The audit was performed for the period ending in March, 1977. The court does not believe that any further burden should have been imposed on plaintiffs than to request damages for a period ending March 31, 1977. They had a right to establish Creason's liability under the contract stipulation, recover damages for a given period, and defer recovery action for subsequent damages to a later date.

For the foregoing reasons, the court finds that defendants' motion for summary judgment should be denied on all counts.

## III. STATUTE OF LIMITATIONS ON THIRD–PARTY CLAIM

The next motion to be addressed is third-party defendant Haynes' motion for summary judgment. Haynes was added as a third-party defendant based on third-party plaintiffs' claim that he is liable for any damages for noncontribution from March 15, 1979 until the effective termination of the contract stipulation, in March, 1982. Third-party plaintiffs contend that Haynes' failure to terminate the contract stipulation as he had expressly promised to do caused this avoidable liability. The third-party complaint also alleges that Haynes failed in his duty to offer and render general legal advice and counsel in regard to the first lawsuit. Third-party defendant Haynes argues that this legal malpractice claim is barred by the statute of limitations.

The first hurdle to clear in determining the merits of Haynes' motion concerns whether the third-party complaint states a cause of action in tort or in contract. Third-party plaintiffs admit that their claim sounds both in tort and contract, but that the claim must be considered under tort law and, therefore, K.S.A. 60–513(b), the two-year statute of limitations for torts, must apply. They further claim that the statute did not begin to run until the Supreme Court denied certiorari in the first lawsuit, on January 9, 1984. Since their third-party claim was filed in 1985, they conclude that the action is timely. Attorney Haynes contends that his promise to terminate third-party plaintiffs' obligation under the contract stipulation constituted a contract, that the three-year statute of limitations for contracts not in writing applies, and that this statute ran three years after January 15, 1979, the last day upon which the contract stipulation could have been effectively terminated prior to 1982. Attorney Haynes also argues that even if the tort statute of limitations is applied, it began to run, at the very latest, when Creason wrote Haynes on August 20, 1981 and complained of Haynes' breach of duty. Therefore, the statute ran long before third-party plaintiffs filed this cause of action in 1985.

Both parties rely on Kansas law in support of their claims. The most recent Kan-

sas decision and one that was cited by both parties is *Pancake House, Inc. v. Redmond*, 239 Kan. 83, 716 P.2d 575 (1986). In *Pancake House*, the defendant attorneys had represented the interests of the plaintiff corporation for two decades. In 1980, however, the attorneys brought suit against the plaintiff on behalf of certain shareholders. In that suit, the court eventually found partly in favor of the shareholders and partly in favor of the corporation. The corporation later sued the attorneys, bringing claims for malicious prosecution, professional negligence, breach of fiduciary duty, and breach of express or implied contract. The Kansas Supreme Court had the following to say about the general nature of legal malpractice claims:

Legal and medical malpractice generally constitute both a tort and a breach of contract. An action for liability of an attorney on the grounds of negligence for failure to discharge his professional duty to a client rests on the employment contract and therefore is contractual in nature. Where the act complained of is a breach of specific terms of the contract without any reference to the legal duties imposed by law upon the relationship created thereby, the action is contractual. Where the essential claim of the action is a breach of a duty imposed by law upon the relationship of attorney/client and not of the contract itself, the action is in tort. (Citation omitted).

Not all malpractice actions in Kansas may be deemed tort actions, however. In *Juhnke v. Hess*, 211 Kan. 438, 506 P.2d 1142 (1973), the plaintiff sued his attorney for failure to file a timely appeal on behalf of his client in a condemnation proceeding. The court said this was a breach of a specific contract—failure to do that which the attorney expressly agreed to perform. The real basis of the claim for relief was financial loss resulting from failure to discharge a contractual obligation (proof of which contract, breach and loss is another matter). Consequently, the claim for relief alleged was one founded on unwritten contract to be governed by the three-year

statute of limitations provided in K.S.A. 60–512(1).

While other jurisdictions are divided as to whether legal malpractice may be categorized as a cause of action in tort or one in contract, Kansas has held that where a legal duty is imposed by law, the cause of action is in tort. Where the malpractice involves failure to perform a contractual obligation, whether express or implied, the cause of action is in contract.

*Pancake House*, 239 Kan. at 85–86, 716 P.2d at 578.

■ The parties have briefed this issue extensively, and for good reason. There simply is no easy answer to this question. The facts are essentially uncontroverted, but a legal determination rising from those facts is elusive. On one hand, it appears to be a very inviting argument to say that Haynes' express promise to terminate Creason's obligation to the funds was a contract. On the other hand, it seems incongruous to hold that Haynes' general handling of Creason's defense in the original suit falls under tort law while certain tasks performed for Creason during the period of representation and relating to the funds' claims can be "contracts." Behind all this are the Kansas cases that are less than specific on the issue of categorizing legal malpractice as a tort or a breach of contract.

The court finds that attorney Haynes' actions in this case, if wrongful at all, constitute a tort and not a breach of contract. The only Kansas case that truly supports his contract theory is *Juhnke v. Hess*, 211 Kan. 438, 506 P.2d 1142 (1973). In that case, the attorney was retained to effect an appeal from an adverse judgment. From the outset, the agreement was limited to that narrow obligation. The attorney did not negligently handle the appeal; rather, he failed to pursue the appeal at all. The attorney's conduct was nonfeasance as opposed to misfeasance, a distinction raised in third-party plaintiffs' brief. This point of emphasis was made clear in the *Juhnke* court's statement that "[t]he real basis ... for relief is financial loss

resulting from *failure* to discharge a contractual obligation...." Id. at 441, 506 P.2d at 1145 (emphasis added). The *Pancake House* court recognized the same distinction when it spoke of the legal duty imposed by the law of attorney/client as distinguished from the *"failure to perform a contractual obligation,"* or the *"failure* to discharge a contractual obligation." *Pancake House*, 239 Kan. at 86, 716 P.2d at 578 (emphasis added).

In the present case, the court does not believe that third-party plaintiffs are alleging this type of nonfeasance in their allegation surrounding termination of the contract stipulation. The third-party defendant admits that the decision not to file a notice of termination pursuant to the terms of the contract stipulation was a conscious one. Attorney Haynes advised Creason not to effect a notice of termination. This was a strategical decision. The absence of a notice of termination in 1979 was not a result of an act of nonfeasance, which is defined as the "[n]onperformance of some act which ought to be performed, omission to perform a required duty at all, or total neglect of duty." Black's Law Dictionary 951 (5th ed. 1979). An example of nonfeasance would have been the failure to properly give a notice of termination in 1982, by which time Judge O'Connor had already determined that Creason was bound by the contract stipulation and the only manner in which he could terminate this obligation would be under the terms of the contract stipulation. Rather, the decision not to terminate in 1979, if wrongful at all, was an act of misfeasance, defined as "[t]he improper performance of some act which a professional man may lawfully do." Id. at 902. Haynes' obligation to Creason was to assert Creason's rights in the lawsuit filed against Creason in November, 1976. When, in the conduct of this litigation, Haynes discovered that Creason might have a continuing obligation to the funds unless the contract stipulation was effectively terminated, his attorney/client obligation required him to do whatever was necessary to protect Creason's rights. The court does not believe that the necessary tasks inherent in the conduct of litigation

can or should be considered as separate contracts, even if the attorney and client expressly agree on the steps that an attorney is to take in handling the matter.

Although the distinction between misfeasance and nonfeasance in this context is extremely subtle, it is unavoidably so because the Kansas courts have been less than unequivocal concerning the nature of a legal malpractice claim. The court is left with subjective decisionmaking, but in the present instance the compelling reasoning supports third-party plaintiffs' position that the malpractice claim should be governed by tort standards. Therefore, the two-year statute of limitations applies to the third-party complaint.

The next determination to be made is the date upon which the cause of action accrued for purposes of the statute of limitations. Third-party defendant Haynes argues that the statute began to run on August 20, 1981, the date on which Creason wrote the letter to Haynes and complained that because of Haynes' conduct, Creason could be liable for an additional three years' worth of contributions to the union funds. Creason argues that the statute did not begin to run until January, 1984, when the United States Supreme Court denied his petition for certiorari and Haynes' conduct resulted in irreversible damage.

■ Kansas law does not afford a clear answer to this issue. In K.S.A. 60–513(b), the Legislature provided a mechanism to determine when a tort cause of action accrues:

> [T]he cause of action in this [section] shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact or injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party....

This statement alone provides very little basis for determining the starting date for the statute in this case, absent some further definition by the Kansas courts.

In a case decided just last year, the Kansas Supreme Court announced that it recognizes at least four theories that may apply to attorney malpractice actions in Kansas in determining when the cause of action accrues for purposes of the statute of limitations. In *Pancake House, Inc. v. Redmond*, 239 Kan. 83, 87, 716 P.2d 575, 579 (1986), the court listed them as follows:

(1) The occurrence rule—the statute begins to run at the occurrence of the lawyer's negligent act or omission.

(2) The damage rule—the client does not accrue a cause of action for malpractice until he suffers appreciable harm or actual damage as a consequence of his lawyer's conduct.

(3) The discovery rule—the statute does not begin to run until the client discovers, or reasonably should have discovered, the material facts essential to his cause of action against the attorney.

(4) The continuous representation rule—the client's cause of action does not accrue until the attorney-client relationship is terminated.

Viewing these four in isolation, numbers (1), (3), and (4) unequivocally support an accrual date on or before August 27, 1981 (the date Creason terminated the attorney/client relationship with Haynes). Number (2) does not necessarily support either side's position, since other state courts have differed on whether an adverse judgment that has been appealed has caused "appreciable harm or actual damage" to the client and Kansas courts have not reached the issue.

The court finds that under the statute and Kansas case law, Creason's cause of action accrued in late August, 1981. Creason relies on artificial reasoning in contending that he suffered no substantial damage because of Haynes' conduct until the United States Supreme Court decided not to hear his appeal. In fact, he suffered real and substantial damage well before that occurrence. Judge O'Connor, a noted legal scholar and jurist, wrote a well-reasoned and supported opinion in which he stated that Creason had never properly terminated the contract stipulation. When this opinion was released in April, 1981, it should have been reasonably clear that Creason had made a serious error in failing to terminate the contract stipulation. Immediately thereafter, Creason was forced to hire new attorneys and appeal the decision to the Tenth Circuit Court of Appeals. This is by no means an inexpensive procedure. No evidence has been submitted on the cost of the appeal, but the mere fact that such an appeal had to be taken seems to this court to be substantially injurious. Creason realized the extent of his injury when, on August 20, 1981, he wrote to Haynes that "Judge O'Connor ruled in effect that we are liable for an additional three years' Health and Welfare Pension payments for the period March 15, 1979, to March 14, 1982." In that same letter, Creason indicated his recognition of the distinct possibility (or probability) that Judge O'Connor's opinion would withstand appeal.

The court does not believe that this ends the inquiry. Even though the cause of action technically accrued in August, 1981, the circumstances of this case may require a tolling of the statute. Creason makes a noteworthy argument when he complains that any suit that he might have filed prior to the Supreme Court's denial of certiorari could have been dismissed. The court finds this situation remarkably similar to an action for malicious prosecution. In such a case, a defendant's cause of action is not ripe until the case has finally ended, even though the defendant may have suffered substantial injury through the plaintiff's filing and prosecution of a frivolous lawsuit. The law in Kansas as to malicious prosecution actions is as follows:

"[A] plaintiff's cause of action for malicious prosecution does not accrue until the time for appeal has passed on the original action...." Some jurisdictions have held that the right to maintain an action for malicious prosecution accrues when judgment is rendered regardless of whether an appeal from such action is taken, but such has not been the rule in Kansas.

*Hutchinson Travel Agency, Inc. v. McGregor*, 10 Kan.App.2d 461, 462–63, 701 P.2d

977, 979 (1985) (quoting *H & H Farms, Inc. v. Hazlett*, 6 Kan.App.2d 263, 269, 627 P.2d 1161, 1167 (1981)). To the extent that this opinion expresses a policy decision on the part of the Kansas courts, then in Kansas a litigant should not be forced into court prior to adjudication of an appeal in which the grounds for the contemplated lawsuit, be it malicious prosecution or attorney malpractice, could be eliminated and the lawsuit avoided.

■ Although Kansas courts have not addressed this situation in the context of a legal malpractice action, the court finds that Kansas law would not begin the running of the statute of limitations until January 9, 1984. Both the *McGregor* decision and the Kansas law discussed earlier in this Memorandum and Order concerning the running of the statute of limitations on the funds' claim against Creason support such a conclusion. Creason was effectively prevented from pursuing his legal malpractice claim because of the appeal of the underlying decision. Moreover, a contrary ruling would foster the filing of potentially avoidable lawsuits. Supporting this conclusion is a letter from Haynes to Creason's attorney, dated August 1, 1983, in which Haynes provided legal precedent in support of his continued belief that Judge O'Connor had ruled erroneously. It is rather obvious that had Creason filed his suit in 1981, Haynes would have argued that the decision could be reversed on appeal and that Creason's malpractice suit had not yet accrued. The court does not believe that the Kansas courts would require a premature filing by an injured client. So whether it is because the relevant injury did not occur until after denial of certiorari, or because Kansas law would toll the running of the statute until after all appeals are prosecuted, this court finds that defendant/third-party plaintiffs' claim against attorney Haynes is not barred by the two-year statute of limitations.

Based on the foregoing, third-party defendant Haynes' motion for summary judgment is denied.

■ The final matter before the court is the third-party plaintiffs' motion for summary judgment on the affirmative defenses raised by attorney Haynes. Haynes has raised the affirmative defense of comparative negligence and wishes to compare the negligence both of Mr. Creason and the attorneys who represented his interests on appeal to the Tenth Circuit. The court need not devote a great deal of discussion to this motion because third-party plaintiffs have failed to meet the standard of proof for summary judgment on Haynes' defenses. First, Haynes contends that Creason's claim of never having signed the contract stipulation is an act that should be compared to Haynes' fault. Creason argues that this is an allegation of an *intentional* tort that should not be compared with Haynes' *negligence*, and cites Kansas authority to that effect. Whether Creason negligently or intentionally deceived Haynes, the court believes that Creason's conduct should be compared with Haynes' fault, if any. Haynes has argued that he advised Creason not to terminate the contract stipulation in 1979 because the act of filing a notice of termination pursuant to the terms of the stipulation would discredit Creason's contention that he never signed the stipulation. If Creason had admitted signing the contract from the outset, Haynes would not have had to worry about protecting Creason's defense and might have effected a proper termination. Creason's conduct is particularly suitable for a comparison of fault.

■ Second, Haynes argues that Creason's appellate attorneys failed in several respects to properly present the appeal. This defense may require a showing that a proper appeal would have resulted in a different decision by the Tenth Circuit, and the court does not believe that this determination is amenable to summary judgment at this point. Even though this court recognizes the great burden on Haynes in establishing the likelihood of a reversal in the court of appeals, he has a right to have the fault of all potentially negligent parties compared, and the court believes that this is best accomplished in a trial of the facts.

Based on the discussion above, third-party plaintiffs' motion for summary judgment must be denied.

IT IS BY THE COURT THEREFORE ORDERED that defendant's motion for summary judgment be denied. IT IS FURTHER ORDERED that third-party defendant Haynes' motion for summary judgment be denied. IT IS FURTHER ORDERED that defendants/third-party plaintiffs' motion for summary judgment be denied.